UNITED STATES of America,
Plaintiff–Appellee,

v.

Pierre Clifton MARSHALL,
Defendant–Appellant.

No. 01–56061.

United States Court of Appeals,
Ninth Circuit.

Submitted April 7, 2003.*

Filed July 23, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Pierre Clifton Marshall, pro se, Taft, CA, defendant-appellant.

Steven R. Welk, Assistant United States Attorney, Asset Forfeiture Section, Los Angeles, CA, for the plaintiff-appellee.

Before: SCHROEDER, Chief Judge, and THOMPSON and GRABER, Circuit Judges.

## OPINION

GRABER, Circuit Judge.

The defendant in this case was entitled to the return of a parcel of forfeited real property but, because the government had sold the property, the monetary equivalent had to be restored to him instead. We are called on to decide what date should be used for the substitute valuation. We agree with the district court that the appropriate yardstick is the property's value when the government sold it and that, because on that date the debt attributable to the property exceeded the defendant's equity in it, the government owes no damages.

## FACTS AND PROCEDURAL HISTORY

Defendant Pierre Clifton Marshall and his wife bought a house on Arminta Street, Canoga Park, California, in 1990, with title being taken in the names of Marshall's wife and his mother. The purchase price

was $287,000, of which $247,000 was financed.

Marshall was arrested in 1992 for distribution of heroin. At the time of the arrest, police searched Marshall's house on Arminta Street and found growing marijuana plants. At the same time, three automobiles belonging to Marshall were seized.

Immediately following the arrest, the two banks holding deeds of trust on the Arminta property stopped receiving payments on their secured loans. The government entered into an agreement with the two lenders. The government agreed to pay the entire unpaid principal on the loans, plus interest, upon a final judgment of forfeiture.

The government then commenced a civil forfeiture action against the Arminta property and obtained a default judgment of forfeiture. As it had agreed to do, the government paid $242,829.54 to the bank holding the first trust deed, plus $53,004.04 to the holder of the second trust deed. Thus, the government paid a total of $295,833.63 to clear the title on the Arminta property.

In 1995, the government sold the Arminta property for $155,000. Shortly thereafter, Marshall filed a Rule 41(e) motion,[1] requesting the return of (1) the Arminta property, (2) another parcel of real estate known as the Whitestag property, and (3) the three vehicles.

In 1999, we decided *United States v. Marolf,* 173 F.3d 1213 (9th Cir.1999). *Marolf* held that, when the government fails to give notice of forfeiture proceedings, and the time for commencing such proceedings has expired, the claimant is entitled to recover the seized property or, if the property has been sold, a sum equal to the value of the property wrongfully forfeited. *Id.* at 1220. In response to Marshall's Rule 41(e) motion, the government conceded before the district court that it had violated Marshall's due process rights under *Marolf* and that Marshall was entitled to any equity he held in the Arminta property.

The district court held a hearing. The court denied Marshall's motion with respect to the vehicles on the ground that the vehicles were seized by a local law enforcement authority and that the federal

1. Before December 1, 2002, Federal Rule of Criminal Procedure 41(e) provided:

A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted, the property shall be returned to the movant, although reasonable conditions may be imposed to protect access and use of the property in subsequent proceedings. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12.

On December 1, 2002, Rule 41 was amended, and the provision regarding motions for return of property was moved to Rule 41(g), which reads:

A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Those changes to Rule 41 do not alter our analysis. We refer to Marshall's claim as a "41(e)" claim, because that is what it was at the time it was made.

government did not have possession or control over them. The court rejected Marshall's claim as to the Whitestag property, because the government had not seized it.

As to the Arminta property, the district court agreed that Marshall had a valid Rule 41(e) claim and that the property should be returned. Because that was impossible, Marshall was entitled to the value of what was taken from him improperly. The district court rejected Marshall's argument that the valuation date should be the date of seizure; using that date would be tantamount to compensating him for the depreciation of the property due to a declining market, which is not permitted under Rule 41(e).[2] The district court also rejected the government's argument that the date of valuation should be the date of forfeiture. The court reasoned that the inquiry is focused on the return of property, not the original deprivation.

The district court concluded that the proper date of valuation is the date on which the Arminta property was sold. Next, the district court noted that the government had sold the property for $155,000, which it found was prima facie evidence of the property's fair market value. The debt attributable to the Arminta property on the date of sale was $247,861.37, which far exceeded Marshall's equity. Consequently, the court held that Marshall is not entitled to any compensation from the government.

Marshall timely appealed from the resulting final judgment.

## STANDARDS OF REVIEW

■ We review de novo a district court's denial of a motion for return of property. *Marolf*, 173 F.3d at 1216. The district court's findings of fact are reviewed for clear error. *Id.*

## DISCUSSION

A. *Marshall is not entitled to damages from the government's wrongful forfeiture of the Arminta property.*

Marshall makes two main arguments relating to the Arminta property: (1) that the district court erred in determining the proper date of valuation; and (2) that the "just compensation" due an individual whose property is taken for public use entitles him to be "put in as good a position pecuniarily as if his property had not been taken."

1. *Date of Valuation*

■ The district court's factual findings that the total debt attributable to the Arminta property was $247,861.37 at the time of sale, that the sale price of $155,000 represented the extant fair market value, and that Marshall had only "negative equity" (i.e., he owed more on the property than it was worth) are supported in the record. In the face of those facts, we are left to consider the district court's conclusion that Marshall is not entitled to damages. We agree with the court's reasoning.

Once the government was no longer in a position to return the Arminta property itself, it was obliged to give Marshall the value of the property seized. Because Marshall owed more than the equity he held, and because the government paid Marshall's debt attributable to the seized property, the government did not deprive him of any value. In fact, Marshall received a financial benefit (albeit unsought

**2.** Evidence of the Arminta property's decline in value was established by a series of three appraisals: (1) In April 1992, it was appraised at $286,000; (2) on June 8, 1993, it was appraised at $230,000; and (3) on August 31, 1994, it was appraised at $200,000.

and understandably unappreciated) by being relieved of the two mortgages.

Marshall's argument that the date of *seizure* is the proper date on which to value the property is unpersuasive. Marshall retained title to his seized property until the moment of the *forfeiture*. After forfeiture, the vesting of title in the government can "relate back" to the commission of the act giving rise to the forfeiture. The Supreme Court has stated this general rule:

> If the Government wins a judgment of forfeiture under the common-law rule— which applied to common-law forfeitures and to forfeitures under statutes without specific relation back provisions—the vesting of its title in the property relates back to the moment when the property became forfeitable. Until the Government does win such a judgment, however, *someone else* owns the property.

*United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 127, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993) (emphasis added).

In this case, that "someone else" continued to be Marshall. And, had the property not been sold, it would have been returned to him at its depreciated value.[3]

Only on the date of sale did the government lose the ability to return the property itself. For that reason, the value on the date of sale was the proper measure of the substitution of money for return of property.

In short, we agree with the district court that the date on which title to the Arminta property passed from the government's hands is the proper date of valuation. More was owed on that date than the property was worth, and the government

paid what was owed, so Marshall is not entitled to damages.

### 2. Just Compensation

Marshall argues in the alternative that he is entitled to "just compensation" under the Fifth Amendment, because the government's seizure and subsequent forfeiture constituted a "taking for public use." However, he brought only a Rule 41(e) motion, not a takings claim. Therefore, this argument is not cognizable on appeal.

### B. Marshall is not entitled to the return of his vehicles or the Whitestag property.

#### 1. The Vehicles

Three vehicles were seized at the time of Marshall's arrest. Declarations in the record show that all three vehicles were seized by officers of the San Fernando Police Department ("SFPD"). According to Marshall, however, the SFPD officers who seized the vehicles were acting pursuant to federal authorization. The SFPD participated in the search that led to the seizure as part of a "drug task force" that included both federal and local law enforcement agencies.

We have held that Rule 41(e) "clearly relates to federal searches leading to federal prosecutions and extends in its furthest reach to searches conducted by state law enforcement agencies with direct federal authorization." *United States v. Huffhines*, 986 F.2d 306, 308 (9th Cir. 1993). However, the district court found, as a factual matter, that there was not a "federal authorization or an agency relationship between federal and state authorities. Instead, this was a joint task force."

---

**3.** Marshall does not argue that any of the depreciation resulted from wrongful acts on the part of the government. Accordingly, we need not and do not decide what effect, if any,

such a demonstration would have. As far as this record shows, general market conditions caused the decline in value of the Arminta property.

The task force was a collaboration, in the course of which the cars were seized by the SFPD alone. Those findings are not clearly erroneous.

On this record, in other words, the SFPD was working *with* federal authorities, rather than *for* them. Because the vehicles were never in federal possession or control, and because the state was not acting under direct federal authorization, the district court did not err.

### 2. *The Whitestag property*

 The district court found that the federal government

never actually seized, forfeited, or physically possessed Whitestag. Marshall's theory is that the government seized an unrecorded quitclaim deed and a recorded second deed of trust, preventing him from proving his ownership interest in the property.

Marshall essentially claims that his property was "taken" by the government. Even if the government's action interfered with Marshall's enjoyment and use of the property so as to amount to a taking, ... [a]n interference that amounts to a taking does not give the government possession so that the property can be returned in a Rule 41(e) motion. If there was a taking or a tort, Marshall has a remedy through either the Fifth Amendment or the Federal Tort Claims Act. But the government cannot be forced to return property that it never possessed. *See United States v. Solis*, 108 F.3d 722, 722–23 (7th Cir.1997); *United States v. Huffhines*, 986 F.2d 306, 306–09 (9th Cir.1993). Therefore, as a matter of law, Marshall's motion for a return of the Whitestag property is not proper

under Rule 41(e) insofar as the government never possessed Whitestag.

We agree.

AFFIRMED.