**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**H. Wayne HAYES, Jr., Defendant–**
**Appellant.**

Nos. 99–10405, 99–15502.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 2000

Filed Nov. 2, 2000

**1134**

Christopher Grillo, Fort Lauderdale, FL, for the defendant-appellant.

Leslie E. Osborne, Jr., Assistant United States Attorney, Honolulu, HI, for the plaintiff-appellee.

Before: ALDISERT*, GRABER and FISHER, Circuit Judges.

ALDISERT, Circuit Judge:

The major question for decision in this appeal by H. Wayne Hayes, Jr. is whether his waiver of his right to counsel in a federal prosecution was knowing, intelligent, voluntary and made with awareness of the dangers and disadvantages of self-representation. He appeals from the district court's order of August 12, 1999, denying his motion for a reduction of sentence pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure and from the district court's order of August 18, 1998, denying a petition for relief under 28 U.S.C. § 2255.

The district court exercised jurisdiction pursuant to 18 U.S.C. § 3231 and 28 U.S.C. § 2255. This court has jurisdiction over the appeal pursuant to 18 U.S.C. § 3742(a); 28 U.S.C. §§ 1291, 2255. The appeal was timely filed. *See* Rule 4(b), Federal Rules of Appellate Procedure.

## I.

Appellant Hayes sold working interests, also known as individual equity shares, in oil and gas leases through his business, the Apollo Oil and Gas Management, Inc. From December 1984 through April 1986, Apollo sold working interests in five oil and gas leases located in Louisiana to residents of Hawaii: the Anisman–Smith lease, the Warren lease, the Pardue lease, the Pardue II lease and the Hilo Drillers lease.

Hayes and his partners obtained approximately $1,037,000 in money and property by inducing members of the public to invest in the five oil and gas leases. The prosecution charged that he operated the business as a Ponzi scheme, making interest payments to some investors from money obtained from other new investors and misrepresenting that the investments were risk-free because they were covered by insurance. The prosecution also contended that Hayes falsely represented to investors that 85 percent of their money was being used solely to acquire and operate income-producing oil and gas properties.

Appellant had been represented by various counsel prior to the trial.[1] However, he represented himself at trial.

During closing argument, the government contended that Hayes sold the Hawaii investors' interest in the Louisiana Warren lease to Texas investors, failing to reimburse the Hawaii investors. The prosecution did not charge Hayes with fraud in connection with this transaction.

On May 7, 1993, a jury convicted Hayes of 14 counts of mail fraud, one count of wire fraud, and two counts of interstate transportation of stolen money. On June 14, 1993, the court sentenced him to a total

---

[*] Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

[1] In an "affidavit" discussed at the hearing to proceed pro se, Hayes mentioned the following counsel: "Douglas Mulder, Earle Partington (Hawaii—Local Counsel), Howard New (Miami Counsel), Sam King Jr. (Hawaii—Lo-

cal Counsel), Arthur Fernandez (Miami—Atty for Recognition Hearing), Mark Schnapp (Miami—Greenburg Traurig—Criminal Counsel) and Jim K. Choate—Douglas Kearney (Dallas Corp. Counsel)." *See* Hayes "aff." at 6 (discussed at district court hearing, September 15, 1992).

of 20 years in prison. On July 28, 1995, Hayes filed a motion to correct an illegal sentence, pursuant to Federal Rule of Criminal Procedure 35(a), and to correct an erroneous pre-sentence report, pursuant to Rule 32(c)(3)(D), pending the appeal of his conviction before a panel of this court. On October 11, 1995, the court denied his motion without a hearing.

Hayes appealed his conviction to this court raising nine separate issues, including an argument that, by not producing favorable evidence held by the Securities and Exchange Commission ("SEC") and by the Hawaii Attorney General's Office, the government violated its duty under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). On April 26, 1996, we affirmed Hayes' conviction in an unpublished memorandum decision, *United States v. Hayes,* 83 F.3d 429, 1996 WL 205482 (9th Cir. Apr. 26, 1996) (table cite).

On July 17, 1997, after the conclusion of appellate processes, Hayes filed a motion for reduction of sentence pursuant to Rule 35(b) in the district court contending that the parole board relied upon inaccurate or false information provided by the SEC. On November 10, 1997, the court dismissed Hayes' motion, explaining that the proper vehicle for review of the parole board's decision was a habeas petition under 28 U.S.C. § 2241 filed in the district of confinement. On appeal, we affirmed the district court's denial of Hayes' motion in part and reversed and remanded in part. *United States v. Hayes,* 173 F.3d 862, 1999 WL 173625, at *1–2 (9th Cir. Mar. 25, 1999) (table cite).

On April 22, 1999, on remand to the district court, Hayes filed a motion for an evidentiary hearing for the Rule 35 motion. On August 12, 1999, the district court denied Hayes' motion for an evidentiary hearing and denied the motion for reduction of sentence.

During this time Hayes had also filed a petition for writ of habeas corpus in district court, pursuant to 28 U.S.C. § 2255, contending (1) that he was denied the right

to counsel when the trial court failed to warn him of the dangers of self-representation; (2) that the government constructively amended the indictment when it argued during closing that Hayes stole an oil lease from Hawaii victims and sold it to Texas investors when he was not charged with that offense; (3) that he was denied effective assistance of counsel of appeal; and (4) that the district court failed to consider newly discovered evidence. On August 18, 1998, the district court denied his § 2255 petition as well as his motion for an evidentiary hearing and related motions for subpoenas duces tecum. Hayes now appeals the district court's August 12, 1999 and March 18, 1998 orders, arguing (1) that he is entitled to a hearing and a Rule 35(b) reduction in sentence because the trial court relied on false information in sentencing him; (2) that he is entitled to a grant of his petition for habeas corpus because he was denied the right to counsel when the trial court failed to warn him of the dangers and disadvantages of self-representation; (3) that the government constructively amended the indictment when it argued during closing that Hayes stole an oil lease from Hawaii investors and sold it to Texas investors; (4) that he was denied effective assistance of counsel on appeal; and (5) that the district court erred in not considering newly discovered evidence.

■ A district court ruling denying a Rule 35 motion in a case involving pre-November 1, 1987 conduct is "reviewed for illegality or gross abuse of discretion." *United States v. Stump,* 914 F.2d 170, 172 (9th Cir.1990). The refusal to grant an evidentiary hearing is reviewed for an abuse of discretion. *United States v. Gonzales,* 765 F.2d 1393, 1396 (9th Cir.1985); *United States v. Holt,* 704 F.2d 1140, 1140 (9th Cir.1983) (per curiam). The denial of a petition under 28 U.S.C. § 2255 is reviewed de novo. *United States v. Navarro,* 160 F.3d 1254, 1255 (9th Cir.1998).

## II.

■ In felony cases, a criminal defendant is entitled to representation by counsel at all critical stages of the prosecution. *See Mempa v. Rhay,* 389 U.S. 128, 134, 136, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). A criminal defendant conversely has the right to waive assistance of counsel and to represent himself or herself in a criminal proceeding. *Faretta v. California,* 422 U.S. 806, 833, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). *Faretta* dictates that Hayes had the right to remove his attorneys of record, *see supra* note 1, and to proceed pro se.

■ To waive the right to counsel, a criminal defendant must make a knowing and intelligent decision that represents an exercise of informed free will. *See, e.g., Faretta,* 422 U.S. at 809–10, 95 S.Ct. 2525. Because of the inherent disadvantage in proceeding without counsel, it is crucial that a defendant who seeks to proceed pro se be fully informed of the ramifications of that decision. *See id.* at 835, 95 S.Ct. 2525 ("Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently to choose self-representation, *he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"*) (emphasis supplied, internal citations omitted). The Court has elaborated upon the dangers that accompany self-representation:

> Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect

one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.

*Id.* at 833 n. 43, 95 S.Ct. 2525 (quoting *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932)).

■ That a trial court is obliged to accede to a proper request to remove counsel when the conditions of waiver are met is not to suggest that self-representation should be encouraged. Rather, the reverse is true. We generally find that a proper waiver has occurred only when the defendant has been made aware of the "three elements" of self-representation: he must be " 'made aware of (1) the nature of the charges against him; (2) the possible penalties; and (3) the dangers and disadvantages of self-representation.'" *United States v. Hernandez,* 203 F.3d 614, 624 (9th Cir.2000) (quoting *United States v. Farhad,* 190 F.3d 1097, 1099 (9th Cir. 1999)). Ideally, the judge will inform the defendant of these three elements in open court:

> [A] district court should not grant defendant's request to waive representation of counsel and serve as his own counsel, without discussing with the defendant, in open court, whether the waiver was knowingly and intelligently made, with an understanding of the charges, the possible penalties, *and the dangers of self-representation.* This is clearly the preferable procedure and should be followed by district courts in every case.

*Lopez v. Thompson,* 202 F.3d 1110, 1117 (9th Cir.2000) (en banc) (quoting *United States v. Harris,* 683 F.2d 322, 324 (9th Cir.1982) (emphasis added)).

■ It is undisputed that the defendant was made aware of the nature of the charges against him and the possible penalties. We therefore must examine the record to determine whether Hayes properly was made aware of the dangers and disadvantages of self-representation.

## III.

The hearing on Hayes' request for self-representation took place on September 15, 1992, before Judge Fong, at which time Appellant was represented by attorney Tim Jones of Louisiana with Samuel P. King, Jr., as local counsel. Hayes had filed a declaration he described as an "affidavit" stating:

I am not being represented at all by Mr. Jones and Mr. King has not been paid to represent in this case.... I need to represent myself pro se since I have spent over $100,000 and have yet to have one (1) defense motion filed by attorneys.

Hayes "aff." at 8–9 (discussed at district court hearing, September 15, 1992).

An examination of the record indicates that, at the hearing on Hayes' motion to proceed pro se, the court asked Hayes if he understood "the consequence of not getting an attorney" and whether he "fully realize[d] the consequences of it." The court further admonished, "if you lose this case, I don't want you to say that you lost it because you didn't have an attorney ... or the Court didn't fairly advise you of

your rights. You are told you have rights of counsel. Do you wish to avail yourself of that?"[2]

The court acted conscientiously in trying to persuade Hayes to have a lawyer, in doing what it could to accommodate his needs in representing himself and in insisting on appointing stand-by counsel. Having said that, insistence on retaining counsel is not the same as instruction on the need of counsel. Although the court emphasized that there are consequences of not having counsel, it did not describe those consequences. Nor did it explain the specific dangers and disadvantages of self-representation in a way that satisfies *Faretta*. The government conceded as much at oral argument:

"Your honor, I would admit that a clear *Faretta* warning does not appear in the transcript of this case."

The government argues, however, that the judge's general reference to the consequences of waiving the right to counsel was sufficient to satisfy *Faretta*'s strictures. But suggesting that there are consequences in the abstract is not enough; there must be some instruction or descrip-

---

2. The transcript of the hearing discloses:
  The Court: Do you want a Court appointed counsel?
  The Defendant: No, sir.
  The Court: You understand the consequence of not getting an attorney?
  The Defendant: Yes, sir; I understand the consequences. I mean I've ...
  The Court: I mean, there are legal arguments to raise, and motions to file. You've indicated to the Court you would like time to file these motions. I don't know how I can give you time. You've already had the time, now. You want more time?

  .    .    .    .    .

  The Court: But now you tell me it seems to be futile, as you view it; so you are going to have to represent yourself, is that what you are saying?
  The Defendant: Yes, sir.
  The Court: And you fully realize the consequences of it? Are you prepared to represent yourself?

  .    .    .    .    .

  The Defendant: Your Honor, I need to represent myself. I do not want a Court appointed attorney in this case. The minute I

file an affidavit in this Court, Mr. Osborne is going to send it to Rory Flynn; they're going to be trying to indict me for filling out an affidavit ...
  The Court: I can't force you to have an attorney; but I don't want you to say that you—if you lose this case, if you lose this case, I don't want you to say that you lost it because you didn't have an attorney, because either the government intimidated you or the Court didn't fairly advise you of your rights. You are told you have rights of counsel. Do you wish to avail yourself of that?
  The Defendant: Sir, the only thing I would ask the Court is, like I said, if I could be placed somewhere where my records are and the evidence is, where I'm close enough.

tion, however minimal, of the specific dangers and disadvantages of proceeding pro se. Because the court's dialogue with Hayes lacks such specificity, we must reverse the conviction and remand for a new trial.

## IV.

■■■■ Although the court must be certain that a defendant seeking to proceed pro se is aware of the disadvantages inherent in doing so, this does not mean that the judge must serve as a surrogate lawyer for the defendant. *See Lopez v. Thompson*, 202 F.3d 1110, 1119 (9th Cir. 2000) (en banc). The teachings of *Faretta* do not require a specific admonition demanding tutelage and legal advice by the trial court. 422 U.S. at 836, 95 S.Ct. 2525. They impose no requirement that the court assess "how well or poorly [a defendant] mastered the intricacies" of evidence and federal or state law. *Id.* A defendant's technical knowledge is "not relevant to an assessment of his knowing exercise of the right to defend himself." *Id.* Moreover, "the trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal 'chores' for the defendant that counsel would normally carry out." *Martinez v. Court of Appeal of California*, 528 U.S. 152, 120 S.Ct. 684, 691, 145 L.Ed.2d 597 (2000). In determining whether a defendant legitimately waived counsel, a trial judge must focus on the defendant's understanding of the importance of counsel, not the defendant's understanding of the substantive law or procedural details.

It therefore becomes apparent that there is some tension, if not contradiction, in the jurisprudence of *Faretta* and its progeny regarding the information the trial court must convey to the defendant. The trial court is not required to impart to the defendant positive "technical legal knowledge" to assist in his self-representation, 422 U.S. at 836, 95 S.Ct. 2525, but is compelled to set forth, at least in minimum fashion, some edification of the pitfalls of self-representation. We have not delineated with much specificity the explanation of the "dangers and disadvantages" required to pass constitutional muster. That the district courts have been seriously troubled by this problem is demonstrated by the fact that, since 1978, this court has found it necessary to reverse convictions in more than 15 cases, set forth in the margin, because of the failure of district courts to explain sufficiently the dangers and disadvantages of self-representation.[3]

■■■■ We do not intend to set forth what would be a minimum explanation to meet the "dangers and disadvantages" demands of *Faretta*. Having said this, we believe that the necessary explanation need not be lengthy or pedantic; it should not be as complex and rigid as is now required in the taking of a guilty plea. There is no required formula. For example, and for the sole purpose of giving guidance to the district courts, we believe that the following illustrative discussion comports with *Faretta*'s requirements:

> The court will now tell you about some of the dangers and disadvantages of representing yourself. You will have to abide by the same rules in court as

**3.** In at least 15 published opinions since 1978, this court has held that the district court failed to properly warn a defendant of the dangers and disadvantages of self-representation. *See, e.g., Bribiesca v. Galaza*, 215 F.3d 1015 (9th Cir.2000); *United States v. Hernandez*, 203 F.3d 614 (9th Cir.2000); *United States v. Keen*, 96 F.3d 425 (9th Cir. 1996); *Snook v. Wood*, 89 F.3d 605 (9th Cir. 1996); *United States v. Mohawk*, 20 F.3d 1480 (9th Cir.1994); *Hendricks v. Zenon*, 993 F.2d 664 (9th Cir.1993); *United States v. Fuller*, 941 F.2d 993 (9th Cir.1991); *United States v.*

*Wadsworth*, 830 F.2d 1500 (9th Cir.1987); *United States v. Balough*, 820 F.2d 1485 (9th Cir.1987); *United States v. Rylander*, 714 F.2d 996 (9th Cir.1983); *United States v. Harris*, 683 F.2d 322 (9th Cir.1982); *United States v. Kimmel*, 672 F.2d 720 (9th Cir.1982); *United States v. Bird*, 621 F.2d 989 (9th Cir.1980); *United States v. Aponte*, 591 F.2d 1247 (9th Cir.1978); *United States v. Gillings*, 568 F.2d 1307 (9th Cir.1978). In addition, several unpublished Memorandum Dispositions reversed district court judgments on this specific ground.

lawyers do. Even if you make mistakes, you will be given no special privileges or benefits, and the judge will not help you. The government is represented by a trained, skilled prosecutor who is experienced in criminal law and court procedures. Unlike the prosecutor you will face in this case, you will be exposed to the dangers and disadvantages of not knowing the complexities of jury selection, what constitutes a permissible opening statement to the jury, what is admissible evidence, what is appropriate direct and cross examination of witnesses, what motions you must make and when to make them during the trial to permit you to make post-trial motions and protect your rights on appeal, and what constitutes appropriate closing argument to the jury.[4]

We emphasize that the foregoing formula is not required to be used verbatim.

■ This, too, must be said. Although it is the ultimate responsibility of the district court to ensure that the defendant is advised of dangers and disadvantages of proceeding pro se, the United States Attorney has an obligation to call the court's attention to any omissions in this regard. Similarly, where defense counsel is present at a hearing on a motion to proceed without counsel of record, it is not inappropriate for counsel to make suggestions relating to *Faretta* requirements.

### V.

Appellant contends also that his counsel in a previous appeal, *United States v.*

*Hayes,* 83 F.3d 429, 1996 WL 205482 (9th Cir. Apr. 26, 1996) (table cite), misled this court when he stated that Hayes had failed to request a subpoena for the SEC records when, in fact, he had requested the records on three occasions. Hayes does not provide evidence that he requested documents from the SEC during trial, and he does not contend that he informed his appellate counsel that he had requested the documents.

■ Nevertheless, Hayes' *Brady* claims already have been expressly addressed and rejected by this court. *See Hayes,* 1996 WL 205482 at *2. When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition. *See United States v. Redd,* 759 F.2d 699, 700–701 (9th Cir.1985). It is the law of this case that the government did not violate its *Brady* obligation because Hayes had independent access to the SEC documents. *See Hayes,* 1996 WL 205482 at *2. The court held also that the documents possessed by the Hawaii Attorney General's Office were not material to Hayes' defense and, thus, could not be the basis of a *Brady* violation. *Id.*

■ At oral argument, Appellant asked that we reverse the decision of the previous panel. It is well established that one panel cannot reverse a decision by a previous panel. *See, e.g., United States v. Hardesty,* 977 F.2d 1347, 1348 (9th Cir.1992). Only the court sitting en banc can reverse

---

4. Cf. *California Judges Benchbook, CRIMINAL PRETRIAL PROCEEDINGS* (1991): "The defendant should be made aware of the disadvantages of self-representation. The defendant should be warned that (a) self-representation is almost always unwise and the defendant may conduct a defense to his or her own detriment; (b) the defendant will have to abide by the same rules as lawyers and will get no assistance from the judge; (c) the People will be represented by experienced counsel who will have the advantage of skill, training and ability; and (d) the defendant will have no special library privileges nor a staff of investigators at his or her beck and

call." H. § 1.45, citing *People v. Lopez,* 71 Cal.App.3d 568, 138 Cal.Rptr. 36 (1977). In *Lopez,* the language is picturesque: "[T]he prosecution will be represented by an experienced professional counsel who, in turn, will give him no quarter because he does not happen to have the same skills and experience as the professional. In other words, from the standpoint of professional skill, training, education, experience, and ability, it will definitely not be a fair fight. It would be Joe Louis vs. a cripple, or Jack Nicklaus vs. a Sunday hacker." 71 Cal.App.3d at 573, 138 Cal.Rptr. 36.

the decision of a panel of this circuit. *See United States v. Washington,* 872 F.2d 874, 880 (9th Cir.1989) (quoting *Montana v. Johnson,* 738 F.2d 1074, 1077 (9th Cir. 1984)) (" 'We are bound by decisions of prior panels' unless an en banc decision, Supreme Court decision, or subsequent legislation undermines those decisions.").

Because we are reversing and remanding for a new trial, it is not necessary to address Appellant's other contentions.

REVERSED and REMANDED.