**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**H. Wayne HAYES, Jr., Defendant–Appellant.**

No. 02–10203.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 2003.

Filed Oct. 8, 2004.

Mary A. Wilkowski, Honolulu, HI (argued), for defendant-appellant H. Wayne Hayes, Jr., in pro. per., on brief.

Harry Yee, Assistant United States Attorney, Honolulu, HI (argued), Michael Chun, Assistant United States Attorney, Honolulu, HI, on brief, for the plaintiff-appellee.

Before: REINHARDT, THOMAS, and CLIFTON, Circuit Judges.

THOMAS, Circuit Judge:

In this appeal, H. Wayne Hayes asks us to reverse the judgment of the district court and to order the United States to reimburse him for restitution payments he made subject to a criminal judgment that was later vacated on collateral review. Under the circumstances presented by this case, we conclude that Hayes is not entitled to the relief that he seeks, and we affirm the judgment of the district court.

## I

Hayes was charged with operating a Ponzi scheme[1] from December 1984 through April 1986 involving the sale to Hawaii residents of working interests in five Louisiana oil and gas leases. *See United States v. Hayes ("Hayes II")*, 231 F.3d 1132, 1134 (9th Cir.2000). The prosecution claimed that Hayes and his partners had led investors to believe that as much as 85% of the invested funds was being used to acquire and run new oil and gas properties, whereas Hayes had actually used most of this money to fund his lavish lifestyle. At trial, the prosecution introduced evidence that, of the $1,187,000 Hayes collected ostensibly for oil exploration and development, some $981,000 was deposited into bank accounts under Hayes' direct personal control. Evidence was introduced showing that Hayes spent

1. "Generically, a Ponzi scheme is a phony investment plan in which monies paid by later investors are used to pay artificially high returns to the initial investors, with the goal of attracting more investors." *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 759 n. 1 (9th Cir.2000).

$644,000 of this money on such things as a home in Florida, a Rolls Royce, expensive jewelry, and other personal expenses. According to the evidence presented in the case, the total amount of oil revenues realized by his oil company during the life of the scheme was only $10,554.18. The prosecution claimed that Hayes would make interest payments on the investments of older investors with money he got from newer investors, while falsely representing to everyone that these investments were fully insured by Lloyds of London, and thus risk-free. While Hayes had been represented by several different lawyers prior to trial, he chose to represent himself at trial. *Id.* at 1134.

On May 7, 1993, Hayes was convicted by a jury of fourteen counts of mail fraud, one count of wire fraud, and two counts of interstate transportation of stolen money. He was sentenced to twenty years in prison, and was ordered by the court to pay (1) $424,705 in restitution to individual non-federal victims of his fraudulent activity; and (2) $850 in special assessments and court costs.

Hayes appealed his conviction, and we affirmed the judgment of the trial court in an unpublished memorandum disposition. *United States v. Hayes ("Hayes I")*, No. 93–10412, 1996 WL 205482 (9th Cir. April 26, 1996). Hayes then petitioned the Supreme Court for a writ of certiorari, which was denied. *Hayes v. United States*, 520 U.S. 1132, 117 S.Ct. 1282, 137 L.Ed.2d 357 (1997). Hayes paid the special assessment, and began making restitution payments pursuant to the criminal judgment to the clerk of the district court, although Hayes claims he made some payments to the Office of the United States Attorney for the District of Hawaii. The restitution payments totaled some $77,507.

Hayes then filed a petition for writ of habeas corpus under 28 U.S.C. § 2255, arguing, *inter alia*, that he had been denied his Sixth Amendment right to counsel when the trial court failed to warn him of the risks of self-representation, as the trial court was required to do by *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). *See* U.S. Const. amend. VI. The district court denied Hayes' § 2255 petition. Hayes appealed, and, in September of 2000, we reversed the denial of his habeas petition and remanded for a new trial, finding that Hayes had not in fact been made aware of the "dangers and disadvantages of self-representation." *Hayes II*, 231 F.3d at 1137–38. On remand, the United States filed a motion to dismiss Hayes' case, because it had lost exhibits necessary for a new trial. The district court granted the motion.

Shortly thereafter, Hayes moved for an "Order Directing Return of Court Costs and Restitution Imposed in Criminal Judgment and Conviction Held to be Unconstitutional," seeking reimbursement both for court costs and for monies he paid to the ostensible victims as restitution upon order of the court.

The magistrate judge ordered the return to Hayes of the special assessment for court costs, but the magistrate denied Hayes' motion for return of the restitution paid by him and disbursed to the non-federal victims. The district court affirmed. Hayes timely appealed.

## II

There are generally four types of monetary penalties that a federal court may (or must, depending on applicable law) impose on a criminal defendant upon a conviction: (1) fines, which are amounts the court sets as punishment; (2) restitution, which consists of amounts paid to identifiable victims of crime who are entitled to compensation; (3) special assessments, which are fixed amounts that courts impose on each count of a conviction; and (4) reimbursement of costs, which is an amount equal to the

court and legal costs of the trial. *See, e.g.,* U.S. Sentencing Guidelines Manual § 5E (2003). Fines, special assessments, and cost reimbursements are generally paid directly to the court. *See id.* However, restitution to victims of crime has been effected through a variety of means, including payments to the court, the United States Attorney's Office, probation officers, and directly to victims. *See National Fine Center: Progress Made but Challenges Remain for Criminal Debt System,* General Accounting Office Report to the Honorable Byron L. Dorgan, U.S. Senate, GAO/ AIMD–95–76, at 3 (May 25, 1995).

■] A wrongly convicted criminal defendant may seek amounts wrongly paid to the government as a result of a criminal judgment. *Telink, Inc. v. United States,* 24 F.3d 42, 46–47 (9th Cir.1994).[2] A separate civil action is not required because "the recovery of wrongly paid fines is 'incident to the vacating and setting aside' of the wrongful conviction." *Id.* (quoting *United States v. Lewis,* 478 F.2d 835,

836(5th Cir.1973).)[3] If a conviction is vacated, *Telink* holds that "wrongly paid fines would be automatically refunded, without requiring a civil action and without regard to the limitations period for civil actions." *Telink,* 24 F.3d at 47. *Telink* also held that wrongly paid restitution could be sought without bringing a separate Tucker Act claim. *Id.* at 46. The same logic applies to special assessments and reimbursement of court costs ordered as part of the criminal judgment. Therefore a wrongfully convicted defendant whose sentence has been vacated may seek monies paid pursuant to a wrongful conviction. Fed R. Crim P. Rule 41(g)[4] motion is a proper mechanism to request such funds.

■] However, whether a Rule 41(g) motion can be successful after a conviction has been successfully attacked collaterally depends upon who possesses the funds at the time of the motion. We hold that if the government still retains funds—such as it does with fines, special assessments,

**2.** The government suggests that the proper forum for Hayes, if any, would be the Court of Federal Claims under the Tucker Act. *See* 28 U.S.C. §§ 1346(a)(2), 1491. However, we declined in both *Telink* and *Martinson* to find the Tucker Act an exclusive source of ancillary relief from criminal judgments. *See Telink,* 24 F.3d at 46–47; *United States v. Martinson,* 809 F.2d 1364, 1367–68 (9th Cir.1987). The government is correct that, in the civil context, we have held that the Court of Federal Claims is the proper forum under the Tucker Act for suits alleging that a government agency has wrongfully disbursed funds in excess of $10,000. *See Bakersfield City Sch. Dist. v. Boyer,* 610 F.2d 621, 628 (9th Cir. 1979); *see also Int'l Fid. Ins. Co. v. United States,* 41 Fed. Cl. 706, 711 (1998). However, *Telink, Martinson,* and Fed.R.Crim.P. 41(g) prescribe an additional remedy with respect to motions for return of property wrongfully seized or improperly withheld in connection with a criminal case. *See Telink,* 24 F.3d at 46–47; *Martinson,* 809 F.2d at 1367–68.

The government also suggests that Hayes' entire lawsuit is barred by sovereign immunity, but this claim clearly fails under *Telink, Martinson,* and Fed.R.Crim.P. 41(g), and is inconsistent with the government's Tucker Act theory. *See id.*

**3.** *Telink* relied on the inherent authority of the court in which judgment was entered to issue orders pertaining to its own judgments. In addition, Fed.R.Crim.P. 41(g) specifically provides that "a person aggrieved by ... the deprivation of property may move the district court in which the property was seized for return of the property on the ground that such person is entitled to lawful possession of the property." In this case, the district court correctly construed Hayes' motion to be one made pursuant to Fed. R. Crim P. 41(g).

**4.** Fed R. Crim. P. Rule 41(e) was amended on April 29, 2002 and was recodified at 41(g). However, the changes were merely "stylistic" and intended to make the Criminal Rules "more easily understood." Fed R. Crim. P. 41 advisory committee's note.

and costs—it must return those amounts, notwithstanding that the conviction was upheld on appeal. Thus, the district court quite properly held that Hayes was entitled to the return of the $850 in special assessments and court costs.

In contrast, if the government retains the monies until the conviction becomes final and then distributes it to identifiable victims, as it did here, the defendant has no right to recover any such sums from the government.[5] In such cases, the government merely served as an escrow agent pending the final judgment and at the proper time paid the funds over to the victims.[6] It cannot now return money it no longer has. *Cf. United States v. Marshall*, 338 F.3d 990, 995 (9th Cir.2003) (holding with regard to a Rule 41(e) motion that "the government cannot be forced to return property that it never possessed."); *United States v. Huffhines*, 986 F.2d 306, 309 (9th Cir.1993). Nor is it liable for damages, because in paying over the funds it acted properly. Hayes contends that the wrongful government conduct upon which a damage award should be founded consists in the acts taken in furtherance of a wrongful prosecution. However, the question here is not the government's conduct in the prosecution; rather, it is the government's conduct *in* disbursing the funds.[7] Here, the government properly held the restitution funds until the conviction was final and then distributed the money to identifiable victims.[8] Therefore Hayes motion for the return of his restitution payments is denied.

The judgment of the district court is **AFFIRMED.**

---

5. This is unlike the situation in *United States v. Beckner*, 16 F.Supp.2d 677, 679 (M.D.La. 1998) (unpublished by unpublished order for jurisdictional reasons). There, the government was ordered to pay an amount equivalent to the disbursed funds when the government distributed money to third parties before the entry of a final criminal judgment. *Id.*

6. Hayes argues that the government's disbursement of the funds is improper up until the time he has exhausted his collateral challenges to the judgment through the filing of a federal habeas motion pursuant to 28 U.S.C. § 2255. Not only would it be impractical for the · payment of restitution to be suspended indefinitely in this manner, it would also be inconsistent with the duty to execute final judgments.

7. For the same reason, the government's argument that Hayes is not entitled to reimbursement because he committed fraud is not sound, given the vacation of the judgment.

8. We need not decide what rights, if any, the defendant might have against third parties with regard to any restitution payments those parties may have received, be they "victims" of the crime or a special fund. *See* 18 U.S.C. § 3663(c) (distributing restitution money in cases of unidentified victim to state programs); *see also Telink*, 24 F.3d at 48 (affirming the district court's decision that laches barred repayment of restitution paid to San Diego and Fresno counties requested in a coram nobis petition challenging a federal conviction).