2015 CO 69

**The PEOPLE of the State of Colorado, Petitioner,**

**v.**

**Louis Alonzo MADDEN, Respondent.**

**Supreme Court Case No. 13SC496**

Supreme Court of Colorado.

December 21, 2015

Rehearing Denied February 8, 2016

Attorneys for Petitioner: Cynthia H. Coffman, Attorney General, John J. Fuerst III, Senior Assistant Attorney General, Denver, Colorado.

Attorneys for Respondent: Douglas K. Wilson, Public Defender, Ned R. Jaeckle, Deputy Public Defender, Denver, Colorado.

CHIEF JUSTICE RICE delivered the Opinion of the Court.

¶ 1 This case requires us to decide whether the trial court had authority to refund costs, fees, and restitution that Respondent Louis Alonzo Madden had paid following his conviction. Madden's conviction was vacated and the prosecution elected not to retry him. None of the statutes governing the costs, fees, and restitution that Madden was ordered to pay address whether the court may draw on those funds. Similarly, procedural rules for defendants seeking post-conviction relief do not address whether a court may order refunds from public funds. Madden did not pursue a refund through the procedures defined in the Exoneration Act, which provides statutory authority for a trial court to issue a refund. Therefore, the trial court did not have statutory authority to order a refund from public funds in this case.

## I. Facts and Procedural History

¶ 2 In 2005, Madden was convicted of attempting to patronize a prostituted child and attempted third degree sexual assault by force. *See* §§ 18–2–101, 18–7–406(1), C.R.S. (2015); 18–3–404, C.R.S. (1999). Madden was originally sentenced to an indeterminate sentence and was ordered to pay costs, fees, and restitution. Specifically, the trial court ordered Madden to pay the following costs and fees: (1) $125.00 to the victim compensation fund, (2) $125.00 to the victims and witnesses assistance and law enforcement fund (referred to as the "VAST" fund in the Register of Actions and this opinion), (3) $30.00 for court costs, (4) $45.00 for a drug standardized assessment, (5) $25.00 for drug testing, (6) $1,000.00 for a special advocate surcharge, (7) $2,000.00 for a sex offender surcharge, (8) $128.00 to the sex offender identification fund, and (9) a "time payment fee" of $25.00. He was also ordered to pay $910.00 in restitution, bringing the total owed to $4,413.00.

¶ 3 On appeal, we reviewed Madden's case and reversed his conviction of attempting to patronize a prostituted child, leaving only his attempted sexual assault conviction intact. *People v. Madden*, 111 P.3d 452, 460 (Colo. 2005). We remanded to the court of appeals, which then returned the case to the trial court with instructions to impose a determinate sentence. *People v. Madden*, No. 02CA0024, slip op. at 4, 2005 WL 1692643 (Colo.App. July 21, 2005). The trial court sentenced Madden to prison for three years, with credit for time served.

¶ 4 Madden then filed a pro se motion under Crim. P. 35(c), alleging ineffective assistance of trial counsel. The trial court appointed counsel and, after an evidentiary hearing, granted the motion and vacated Madden's conviction. The prosecution elected not to appeal the order or retry the case. Shortly thereafter, Madden requested that he no longer be required to register as a sex offender and that the court refund the costs, fees, and restitution that he had paid. Madden had paid $1,220.00 toward the costs and fees and $757.75 in restitution, for a total of $1,977.75. The trial court determined that the amount that Madden had paid toward costs and fees should be returned, so Madden received a $1,220.00 refund. The restitution money, however, had been paid to the

counseling service that the victim used and could not be returned. The trial court reasoned that the counseling service could sue the victim to recover that money, and the victim should not be required to return the restitution money. Madden appealed.

¶ 5 The court of appeals reversed the trial court's decision, holding that Madden was "entitled to a refund of the restitution that he paid in connection with his vacated conviction and that he may seek such a refund from the state in the context of this case." *People v. Madden,* 2013 COA 56, ¶ 1, 362 P.3d 1070. The People then petitioned this court for certiorari, asking whether the trial court may order a refund of restitution. We granted certiorari to consider whether a trial court may order refunds of costs and fees,[1] in addition to restitution.[2]

## II. Standard of Review

■ ¶ 6 Whether a trial court has authority to order a refund of costs, fees, and restitution presents a question of law, which we review de novo. *See People v. Porter,* 2015 CO 34, ¶ 8, 348 P.3d 922, 924. This case involves issues of statutory construction, which we also review de novo. *Mishkin v. Young,* 107 P.3d 393, 396 (Colo.2005).

## III. Analysis

■ ¶ 7 As we explain in *People v. Nelson,* which we also issue today, a trial court must have statutory authority to order a refund from public funds.[3] *See* 2015 CO 68, ¶ 1, 362 P.3d 1070. None of the statutes governing the costs, fees, and restitution that Madden was ordered to pay address whether the court may draw on those funds. Similarly, procedural rules for defendants seeking

post-conviction relief do not address whether a court may order refunds from public funds. *See* C.R.C.P. 60(b); Crim. P. 35(a). Moreover, sections 13–65–101 to –103, C.R.S. (2015) ("the Exoneration Act" or "the Act") "created an exclusive process for exonerated defendants seeking a refund of costs, fees, and restitution." *Nelson,* ¶ 44. Therefore, because the trial court did not have statutory authority to draw on public funds—outside of the procedures created in the Exoneration Act—it did not have authority to refund costs, fees, and restitution to Madden.

■ ¶ 8 The power to collect, manage, and distribute public funds is inherently legislative, and the court may not intrude on those powers without constitutional or statutory authority. *Nelson,* ¶ 40 (citing Colo. Const. art. III); *see also People v. Dist. Ct., City & Cty. of Denver,* 808 P.2d 831, 835 (Colo.1991) (noting that a monetary award "payable from public funds implicates sensitive budget and funding considerations, and authority to intrude into these areas is not to be lightly implied" and holding that such an award "is beyond the authority of the trial court"). For this reason, a trial court must have statutory authority to order a refund from public funds. *Nelson,* ¶ 41.

¶ 9 None of the statutes supporting the costs, fees, and restitution that Madden paid contemplate a trial court issuing refunds to defendants. Madden incurred many of the same fines as the defendant in *Nelson,* and we determined that none of the statutes governing those fees and restitution allow for a refund. *See* ¶ 44 (determining that statutes governing the victim compensation fund, VAST fund, docket fees, time payment fees,

1. The issue of whether costs and fees may be refunded was preserved at the trial court level by Madden's motion. *See People v. Melendez,* 102 P.3d 315, 322 (Colo.2004) (explaining that an issue is preserved for appeal when the trial court is "presented with an adequate opportunity to make findings of fact and conclusions of law on [the] issue").

2. We granted certiorari to review whether the trial court may order a refund of not only restitution, but also costs and fees. *See* C.A.R. 3(a) ("Content of the notice of appeal is not jurisdictional."); C.A.R. 49(a) (stating that this court's review on writ of certiorari "is a matter of sound

judicial discretion"). Specifically, we granted certiorari on the following issue: "Whether a criminal court has jurisdiction to order a refund of costs, fees, and restitution from the State upon defendant's post-conviction motion in the criminal case following either his acquittal or his conviction being vacated and the prosecution electing not to retry him."

3. As we noted in *People v. Nelson,* "any potential refund of restitution could come only from a public fund." 2015 CO 68, ¶ 40 n. 4, 362 P.3d 1070. Neither the court nor defendants may force victims to return money that they received as restitution under these circumstances. *Id.*

and restitution do not authorize a court to order refunds from public funds).

¶ 10 Madden incurred several additional fees as well, but the statutes governing these fees also do not contemplate refunding the fees to defendants. First, the court ordered Madden to pay a sex offender surcharge, which, once collected, is transmitted to the state treasurer to fund the sex offender surcharge fund. *See* § 18–21–103(2)(b), C.R.S. (2015). The General Assembly may appropriate money from this fund for the identification, evaluation, and treatment of adult sex offenders. § 16–11.7–103, C.R.S. (2015). Second, Madden was charged a special advocate surcharge. *See* § 24–4.2–104(1)(a)(II), C.R.S. (2003). Funds raised by this surcharge are added to the VAST fund in the judicial district where the offense occurred. *Id.* Third, Madden was charged "drug standardized assessment" and "drug testing" fees for services to monitor his substance use. *See* §§ 16–11.5–102, 18–1.3–209, C.R.S. (2015). Finally, he was charged a $128.00 sex offender identification fee. *See* § 16–11–102.4, C.R.S. (2015). Sex offender identification fees are deposited into the offender identification fund, located in the state treasury. §§ 16–11–102.4(4), 24–33.5–415.6, C.R.S. (2015). The legislature appropriates money in this fund for genetic testing of sex offenders. § 24–33.5–415.6.

¶ 11 All of these statutes governing costs, fees, and restitution explain when the fines should be imposed, how they should be collected, and how that money may be used. *See Nelson,* ¶ 39; *see also, e.g.,* § 18–1.3–209 (noting that drug standardized assessments are conducted "at the expense of the person assessed"); § 24–33.5–415.6 (describing the offender identification fund and how that money may be used). Here, Madden paid $757.75 as restitution, which was paid to the victim's counseling service; and $1,220.00 in costs and fees, which went to the victim compensation fund and the VAST fund. *See* § 16–18.5–110, C.R.S. (2015) (listing the order for crediting payments to different funds); § 24–4.2–104(1)(a)(I), C.R.S. (2015) (directing that the special advocate surcharge be deposited into the VAST fund). Because these statutes clearly state how money in

these funds is to be used—and do not address the possibility of refunds—they do not permit the trial court to order a refund from these funds. *See Nelson,* ¶¶ 37–39.

■ ¶ 12 The parties point to two procedural rules that allow a court to grant a party post-conviction relief, suggesting that these provisions authorize a court to issue refunds. *See* C.R.C.P. 60(b); Crim. P. 35(a). However, neither rule addresses the court's authority to order a refund. C.R.C.P. 60(b) permits a court to "relieve a party . . . from a final judgment, order, or proceeding" under certain conditions, including:

(1) Mistake, inadvertence, surprise, or excusable neglect;

(2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(3) the judgment is void;

(4) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(5) any other reason justifying relief from the operation of the judgment.

¶ 13 In this case, C.R.C.P. 60(b) permitted the court to hear Madden's motion seeking relief from his vacated conviction, but it did not give the court the authority to draw on public funds. The court had authority to grant Madden relief from his now-vacated conviction: the trial court released Madden from the obligation to register as a sex offender. C.R.C.P. 60(b) empowered the court to order this relief because it did not implicate "sensitive budget and funding considerations." *See Dist. Ct.,* 808 P.2d at 835. C.R.C.P. 60(b) does not, however, address a trial court's ability to order a refund, or explain how a refund might be financed. Therefore, C.R.C.P. 60(b) does not authorize a court to order a refund from public funds.

■ ¶ 14 Next, Madden argues that Crim. P. 35(a) permits a trial court to order a refund. Crim. P. 35(a) allows a court to "correct a sentence that was not authorized by law or that was imposed without jurisdiction at any time and may correct a sentence

imposed in an illegal manner." As we explained in *Nelson*, money that is withheld pursuant to clear statutory authority while a conviction is in place is not wrongfully withheld. ¶ 48. Because the court had statutory authority to order Madden to pay costs, fees, and restitution in connection with his conviction, the order was authorized by law and the fines were not imposed in an illegal manner. *Contra* Crim. P. 35(a). Therefore, Crim. P. 35(a) does not apply in this case, and it did not grant the trial court authority to order a refund from public funds.

¶ 15 Finally, we note that the Exoneration Act provides the proper procedure for seeking refunds when a defendant has been exonerated. *See* §§ 13–65–101 to –103. When we interpret multiple statutes, a specific provision prevails over a general provision. *Nelson*, ¶ 43 (citing *Climax Molybdenum Co. v. Walter*, 812 P.2d 1168, 1174 (Colo. 1991); § 2–4–205, 1B C.R.S. (1980) (now codified at § 2–4–205, C.R.S. (2015))). Neither the statutes governing the imposition and management of costs, fees, and restitution nor the procedural rules that allow for post-conviction relief directly address whether a defendant may receive a refund. By contrast, the Exoneration Act specifically identifies a procedure and a source of funding for exonerated defendants seeking refunds of costs, fees, and restitution. § 13–65–103(2)(e)(V).

¶ 16 Therefore, when a defendant's conviction is vacated and the prosecution elects not to retry him, a trial court may only authorize a refund of costs, fees, and restitution pursuant to the process created in the Exoneration Act. Madden did not seek a refund through this process.[4] Accordingly, the trial court lacked the authority to order a refund of Madden's costs, fees, and restitution. *See Nelson*, ¶ 45.

### IV. Conclusion

¶ 17 The trial court did not have the authority to grant a refund of costs, fees, and restitution to Madden. The Exoneration Act provides the only procedure for exonerated criminal defendants to seek refunds of costs, fees, and restitution. Accordingly, we reverse the court of appeals' ruling and remand the case for proceedings consistent with this opinion.

JUSTICE HOOD dissents.

JUSTICE GABRIEL does not participate.

JUSTICE HOOD, dissenting.

¶ 18 Louis Madden sought a refund of the costs, fees, and restitution he paid on account of two invalid criminal convictions. The trial court determined he was entitled to reimbursement for the costs and fees but not the restitution. The court of appeals determined he could also get back the restitution money. *People v. Madden*, 2013 COA 56, ¶ 1, — P.3d —. The majority now concludes he is entitled to nothing. *See* maj. op. ¶¶ 1, 7.

¶ 19 I believe the court of appeals got it right, and I would therefore affirm that court's well-reasoned opinion authored by then-Judge Gabriel. In today's companion case of *People v. Nelson*, 2015 CO 68, ¶ 53, 362 P.3d 1070 (Hood, J., dissenting), I conclude that a defendant who wins reversal on direct appeal is entitled to a full refund. For the reasons I articulate in *Nelson*, I would also permit the district court to grant the same relief to Madden. Because the majority concludes the district court lacked authority to award Madden a refund, I respectfully dissent.

¶ 20 Madden's case reached us in a procedural posture distinct from *Nelson*. I do not believe this difference should matter, but I write briefly to address a contrary view.

¶ 21 A jury convicted Madden of two offenses. He appealed, and we reversed his conviction for attempting to patronize a prostituted child because the State presented no evidence that Madden took part in an exchange of value to engage in sex with a child.

---

4. The Exoneration Act allowed defendants to seek relief, even if they met the criteria prior to the Act's passage, as long as they acted before June 5, 2015. § 13–65–102(1)(b)(II), C.R.S. (2015). Madden did not seek a refund through procedures created by the Act in the allotted two-year time frame. Therefore, we do not consider whether he met the other criteria that the Act demands, such as actual innocence.

*See People v. Madden,* 111 P.3d 452, 454, 459–60 (Colo.2005). Left standing was Madden's conviction for third degree sexual assault.

¶ 22 On collateral review, Madden argued that this remaining conviction was invalid because the lawyer at his trial was constitutionally ineffective. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In 2009, the district court agreed with him. Madden had "clearly shown" his counsel was deficient. Among other things, Madden's counsel solicited testimony concerning a harmful rumor about his client that was "inadmissible double or triple hearsay," allowed a police officer to testify to the alleged victim's truthfulness, and invited into the case other "extremely damning" evidence. The court was convinced there existed a reasonable probability that, but for these errors, Madden would not have been convicted. It therefore vacated his conviction. The People did not retry him, and thus, Madden has never been validly convicted.

¶ 23 As I explained in *Nelson,* defendants are not constitutionally entitled to a direct appeal, but, when the legislature establishes such a right, defendants are entitled to due process throughout that appeal. *See Nelson,* ¶ 58 (Hood, J., dissenting). Similarly, there is no constitutional right to post-conviction review. *See People v. Wiedemer,* 852 P.2d 424, 438 (Colo.1993) (citing *Pennsylvania v. Finley,* 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)). Colorado nonetheless provides for collateral challenges. *See* § 18–1–410, C.R.S. (2015); Crim. P. 35. Thus, defendants have statutory rights to challenge their convictions directly and collaterally, though the procedures are quite different. *See Jurgevich v. Dist. Court,* 907 P.2d 565, 567 (Colo.1995) ("A collateral attack ... does not invoke the same rights as a direct appeal." (citing *Wright v. West,* 505 U.S. 277, 287–93, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (plurality opinion))). But whichever procedural road a defendant travels, I fail to see why the State is entitled to retain the funds paid by a defendant who ultimately shows his conviction is invalid.

¶ 24 I acknowledge at least one court has seen fit to draw a distinction between the relief available following a reversal on direct appeal and following a collateral invalidation of a conviction. *See United States v. Hayes,* 385 F.3d 1226, 1229–30 (9th Cir.2004). I am not persuaded by the Ninth Circuit's reasoning. In *Hayes,* a defendant won post-conviction relief because of a Sixth Amendment violation, and the government elected not to retry him. *Id.* at 1227–28. Hayes then sought a refund from the United States for the payments he made while subject to his invalid criminal conviction. *Id.* at 1228. The panel, citing *Telink, Inc. v. United States,* 24 F.3d 42, 46–47 (9th Cir.1994), agreed he could be reimbursed for costs and special assessments, but it concluded that, in the post-conviction context, a refund of restitution depends on whether and when the government disbursed the funds. *See Hayes,* 385 F.3d at 1229–30. The court concluded that even an invalidly convicted defendant cannot recover from the government money it no longer has so long as the government waited until the conviction was final before disbursing the money. *Id.* at 1230. The Ninth Circuit compared the government's role to that of an escrow agent, and it rejected the defendant's view that the government must not disburse any funds before a defendant exhausts his collateral challenges. *See id.* at 1230 & n.6. By granting Madden a refund of his costs and fees while denying him a restitution refund, the trial court in this case effectively arrived at the same result.

¶ 25 While I agree the government has a legitimate interest in effectuating its system of restitution payments for crime victims—among the legislatively declared purposes of the system is the "expeditious" collection and "timely" distribution of compensation, § 18–1.3–601(1)(g)(I)–(II), C.R.S. (2015)—I find the Ninth Circuit's escrow analogy inapt, at least for the situation here. The State is not required to sit on the restitution money of all defendants through collateral or direct review; it must only reimburse those defendants who are never validly convicted. The legislature is free to determine the best means of providing for these refunds. *See Nelson,* ¶ 79 (Hood, J., dissenting).

¶ 26 Moreover, a distinction between direct and collateral review would devalue certain constitutional rights purely on the basis of which procedural tool a defendant used to vindicate them. For example, a defendant who suffered a Fourth Amendment violation could receive a full refund if he sought direct review of his suppression motion, while a defendant who suffered a Sixth Amendment violation could not receive a full refund if he sought review through a collateral challenge. Madden used the collateral process and demonstrated that his conviction was obtained in violation of the Sixth Amendment. He too should be placed in the status quo ante. As this court has previously remarked, "[U]nconstitutional convictions, in addition to being of suspect reliability, abridge the very charter from which the government draws its authority to prosecute anyone." *People v. Germany*, 674 P.2d 345, 349 (Colo.1983).

¶ 27 Thus, I conclude Madden is just as entitled to a refund of his costs, fees, and restitution as a defendant winning reversal on direct appeal. For the reasons given in my dissent in *Nelson*, I therefore respectfully dissent.