Justice THOMAS, dissenting.
The majority and concurring opinions debate whether the procedural due process framework of Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), or that of Medina v. California, 505 U.S. 437, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992), governs the question before us. But both opinions bypass the most important question in these cases: whether petitioners can show a substantive entitlement to a return of the money they paid pursuant to criminal convictions that were later reversed or vacated.
The Court assumes, without reference to either state or federal law, that defendants whose convictions have been reversed have a substantive right to any money exacted on the basis of those convictions. By doing so, the Court assumes away the real issue in these cases. As the parties have agreed, the existence of Colorado's obligation to provide particular procedures depends on whether petitioners have a substantive entitlement to the money. Colorado concedes that "if [petitioners] have a present entitlement" to the money-that is, if "it is their property"-"then due process requires [the State to accord] them some procedure to get it back." Tr. of Oral Arg. 52. And Colorado acknowledges that the procedural hurdles it could impose before returning the money "would be fairly minimal," id., at 51, because petitioners would need to prove only that their convictions had been reversed and that they had paid a certain sum of money, see ibid. Similarly, petitioners concede that if defendants in their position do not have a substantive right to recover the money-that is, if the money belongs to the State-then Colorado need not "provide any procedure to give it back." Id., at 53. If defendants in their position have no entitlement to the money they paid pursuant to their reversed convictions, there would be nothing to adjudicate. In light of these concessions, I can see no justification for the Court's decision to address the procedures for adjudicating a substantive entitlement while failing to determine whether a substantive entitlement exists in the first place.
In my view, petitioners have not demonstrated that defendants whose convictions have been reversed possess a substantive entitlement, under either state law or the Constitution, to recover money they paid to the State pursuant to their convictions. Accordingly, I cannot agree with the Court's decision to reverse the judgments of the Colorado Supreme Court.
*1264 I
The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amdt. 14, § 1 (emphasis added).[1] To show that Colorado has violated the Constitution's procedural guarantees, as relevant here, petitioners must first establish that they have been deprived of a protected property interest. See Castle Rock v. Gonzales, 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005) ("The procedural component of the Due Process Clause does not protect everything that might be described as a benefit: To have a property interest in a benefit, a person clearly must have ... a legitimate claim of entitlement to it" (internal quotation marks omitted)). "Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.' " Phillips v. Washington Legal Foundation, 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) (quoting Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ). Petitioners undoubtedly have an "interest in regaining the money they paid to Colorado." Ante, at 1255. But to succeed on their procedural due process claim, petitioners must first point to a recognized property interest in that money, under state or federal law, within the meaning of the Fourteenth Amendment.
A
The parties dispute whether, under Colorado law, the petitioners or the State have a property interest in the money paid by petitioners pursuant to their convictions. Petitioners contend that the money remains their property under state law. Reply Brief 1-3; see also Tr. of Oral Arg. 52-54. Colorado counters that when petitioners paid the money pursuant to their convictions, the costs and fees became property of the State and the restitution became property of the victims. See id ., at 28-30; Brief for Respondent 41.
The key premise of the Colorado Supreme Court's holdings in these cases is that moneys lawfully exacted pursuant to a valid conviction become public funds (or the victims' money) under Colorado law. The Colorado Supreme Court explained in petitioner Shannon Nelson's case that "the trial court properly ordered [her] to pay costs, fees, and restitution pursuant to valid statutes" and that "the court correctly distributed th[ose] funds to victims and public funds, as ordered by the statutes." 362 P.3d 1070, 1076 (2015) (emphasis added); accord, 364 P.3d 866, 868-870 (2016) (applying the same analysis to petitioner Louis Madden's case). The Colorado Supreme Court further noted that, "[o]nce the state disburses restitution to the victims, the state no longer controls that money." 362 P.3d, at 1077, n. 4.
The Colorado Supreme Court explained that "Colorado's constitution protects" the Colorado Legislature's "control over public *1265 money," and thus a "court may authorize refunds from public funds only pursuant to statutory authority." Id., at 1076-1077. The Exoneration Act, the Colorado Supreme Court held, provides the only statutory authority for refunding costs, fees, and restitution when a defendant's conviction is overturned. Id., at 1077-1078. Because petitioners had not sought a refund under the Exoneration Act, "the trial court lacked the authority to order a refund of Nelson's costs, fees, and restitution." Id., at 1078 ; 364 P.3d, at 867.
At no point in this litigation have petitioners attempted to demonstrate that they satisfy the requirements of the Exoneration Act. Under the Act, Colorado recognizes a substantive entitlement to the kind of property at issue in these cases only if, among other things, the defendant can prove that he is "actually innocent."[2] Colo.Rev.Stat. §§ 13-65-101, 13-65-102 (2016). It is the Exoneration Act alone which defines the scope of the substantive entitlement. This Court has interpreted the Due Process Clause to require that the States provide certain procedures, such as notice and a hearing, by which an individual can prove a substantive entitlement to (or defend against a deprivation of) property. But the Clause, properly understood, has nothing to say about the existence or scope of the substantive entitlement itself. See Part I-B, infra . If petitioners want this Court to rewrite the contours of the substantive entitlement contained in the Exoneration Act, they err in invoking procedural due process. See Reply Brief 1-2 ("Our argument sounds in procedural due process").
The majority responds by asserting, without citing any state law, that Colorado "had no legal right to retain [petitioners'] money" once their convictions were invalidated. Ante, at 1256, n. 11. If this were true as a matter of state law, then certain provisions of the Exoneration Act-which require the State to return costs, fees, and restitution only in limited circumstances following a conviction's reversal-would be superfluous. Thus, to the extent the majority implicitly suggests that petitioners have a state-law right to an automatic refund (a point about which the majority is entirely unclear), it is plainly incorrect.
B
Because defendants in petitioners' position do not have a substantive right to recover the money they paid to Colorado under state law, petitioners' asserted right to an automatic refund must arise, if at all, from the Due Process Clause itself. But the Due Process Clause confers no substantive rights. McDonald v. Chicago, 561 U.S. 742, 811, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (THOMAS, J., concurring in part and concurring in judgment) ("The notion that a constitutional provision that guarantees only 'process' before a person is deprived of life, liberty, or property could define the substance of those rights strains credulity for even the most casual user of words"). And, in any event, petitioners appear to disavow any substantive due process right to a return of the funds they paid. See Reply Brief 1-2; Tr. of *1266 Oral Arg. 18-19. In the absence of any property right under state law (apart from the right provided by the Exoneration Act, which petitioners decline to invoke), Colorado's refusal to return the money is not a "depriv[ation]" of "property" within the meaning of the Fourteenth Amendment. Colorado is therefore not required to provide any process at all for the return of that money.
II
No one disputes that if petitioners had never been convicted, Colorado could not have required them to pay the money at issue. And no one disputes that Colorado cannot require petitioners to pay any additional costs, fees, or restitution now that their convictions have been invalidated. It does not follow, however, that petitioners have a property right in the money they paid pursuant to their then-valid convictions, which now belongs to the State and the victims under Colorado law. The Court today announces that petitioners have a right to an automatic refund because the State has "no legal right" to that money. Ante, at 1256, n. 11. But, intuitive and rhetorical appeal aside, it does not seriously attempt to ground that conclusion in state or federal law. If petitioners' supposed right to an automatic refund arises under Colorado law, then the Colorado Supreme Court remains free on remand to clarify whether that right in fact exists. If it arises under substantive due process, then the Court's procedural due process analysis misses the point.
I respectfully dissent.

In a footnote, the Court briefly opines on how a Medina analysis would come out in these cases. The Court's discussion of the issue, which is dictum, is substantially incomplete. The Court suggests that Medina would support its judgment because the presumption of innocence is deeply rooted and fundamental. Ante, at 1256, n. 9. It is true, of course, that this presumption is restored when a conviction is reversed. But that says very little about the question at hand: namely, what must happen once that presumption is restored. Notably, the Court cites not a single case applying the presumption of innocence in the refund context. At the same time, the Court ignores cases that bear directly on the question in these cases and thus must be part of a proper Medina inquiry. See infra, at this page and 1259 - 1260.

The Court's position is also at odds with other principles of our procedural due process jurisprudence. It is well settled, for example, that a plaintiff who is deprived of property with inadequate process is not entitled to be compensated if the defendant can prove the deprivation "would have occurred even if [the plaintiff] had been given due process." Thompson v. District of Columbia, 832 F.3d 339, 346 (C.A.D.C.2016) ; see Carey v. Piphus, 435 U.S. 247, 260, 263, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). This principle is in obvious tension with the Court's holding.