2025 IL App (1st) 240221

FIFTH DIVISION
September 30, 2025

No. 1-24-0221

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 18 C6 60468 |
| | ) | |
| ANDREA BILLUPS-DRYER, | ) | The Honorable |
| | ) | Carl B. Boyd, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE TAILOR delivered the judgment of the court, with opinion.
Justice Gamrath concurred in the judgment and opinion.
Justice Hyman specially concurred, with opinion.

**OPINION**

¶ 1    This case presents an issue of first impression in Illinois. If a defendant is ordered to pay court costs, fees, and restitution to the victim in connection with her conviction and that conviction is subsequently vacated, is she entitled to the return of the funds paid, even if it has already been paid out to the victim, and if so, what process must be followed? We answer the question in the affirmative and further hold that substantial procedural hurdles may not be imposed on defendant's right to return of the funds.

¶ 2                                    I. BACKGROUND

¶ 3      Andrea Billups-Dryer was charged with one count of Class 3 felony theft for allegedly posing as the landlord of a property—which she did not own and did not possess an interest in—so she could steal money from a tenant. The information alleged that Billups-Dryer deceptively obtained between $500 and $10,000 from Michele Patterson-Joseph with the intent to permanently deprive her of that money.

¶ 4      The case proceeded to a jury trial, and Billups-Dryer elected to represent herself. After a jury convicted her of theft, Billups-Dryer retained private counsel. When the court set a D-bond of $90,000, which required Billups-Dryer to post $9,000, the court said it was inclined to use the bond money as restitution. Defense counsel informed the court that Billups-Dryer's husband had "tapped into his retirement savings" and was "able to come up with $9000 to post bond." Defense counsel also stated that Billups-Dryer and her husband "understand" that the bond money "could more than likely go towards the restitution that will be ordered in this case." After the State requested a source of funds hearing, the court instructed Billups-Dryer's husband to return to court with documentation to prove up the source of funds. The court then entered an order, finding the source of funds tendered acceptable and authorizing the clerk of the circuit court to accept them.

¶ 5      At the sentencing hearing on September 16, 2019, defense counsel noted that, at the bond hearing, "your Honor made clear that this [bond money] would more than likely go to restitution. Knowing this, Ms. Billups-Dryer and her family put this money up wanting it to go to restitution. So it will be full restitution already from the bond, and so that's where we are in terms of that." Defense counsel added that Billups-Dryer and her family "willingly made full restitution to the victim in terms of the bail, which is available to the victim at this point." The court sentenced Billups-Dryer to two years' probation and ordered her to pay $9,000 to the victim, Patterson-

Joseph, which "will be credited from the bond that has been posted in this matter." Billups-Dryer was also ordered to pay court costs and fees totaling $874. A receipt dated October 11, 2019, shows that the clerk of the circuit court paid out the $9,000 bond deposit to Patterson-Joseph according to the court's restitution order.

¶ 6    Billups-Dryer appealed her conviction, and on November 23, 2022, this court reversed and remanded, finding that the trial court failed to substantially admonish her under Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before accepting her waiver of counsel. See *People v. Billups-Dryer*, 2022 IL App (1st) 191947-U.

¶ 7    At a hearing on February 23, 2023, the State informed the court that Billups-Dryer's case had been reversed and remanded for a new trial. The court asked Billups-Dryer, who appeared *pro se*, if she had paid the restitution order. She confirmed that she had, as well as court costs. On April 18, 2023, the court vacated Billups-Dryer's June 19, 2019, conviction. The State informed the court that it spoke with the purported victim, Patterson-Joseph, who indicated that she "does not wish to proceed based on everything else." For that reason, the State moved for *nolle prosequi* in the case. In its April 18, 2023, order, the court wrote, "judgment and conviction entered on 6.19.2019 is hereby vacated. MSNP all counts."

¶ 8    On May 16, 2023, Billups-Dryer filed a notice to amend the court's order dismissing her case to include the release of bond, restitution, court fees, and court costs paid. She listed the following amounts: $2,000 for bond, $9,000 for bond/restitution, $874 for court fees, and $250 for DNA fees. In her affidavit in support of her motion, Billups-Dryer wrote the following:

"At the April 18, 2023, court date the prosecutor stated that the alleged victim did not want to move forward with the case due to all the things going on. Andrea Billups-Dryer was previously assessed Bonds and fees in this case totaling $12,124.00, which were paid in

full. [Billups-Dryer] has filed a Motion to return all fees in this cause. This case was dismissed and or vacated on April 18, 2023."

¶ 9     On June 9, 2023, the court held a hearing on Billups-Dryer's motion. The State argued that, because the matter was already dismissed, the Court was no longer vested with jurisdiction. When the court asked the State whether it "dismiss[ed] the matter because the victim in the case had received the proceeds because she had been fully reimbursed," the State responded affirmatively. The court stated,

> "There appears to have been an implicit agreement that evaded the Court, and the agreement appears to have been such that because the victim had been reimbursed in order not to—the State decided not to bring any more action against the defendant, and the case was dismissed. And now after the case is dismissed, the—Ms. [Billups-Dryer] returns to the Court and asks to be—asks for the money back. Is that what we have?"

Billups-Dryer, who appeared *pro se*, disagreed. She informed the court that she called the State "before the case was dismissed to request [her] funds back" but that it "gave [her] the run-around." At a hearing on June 29, 2023, Billups-Dryer told the court that her appellate attorney told her to say that "the Supreme Court [in *Nelson v. Colorado*] has made clear that to comport with due process, the [S]tate may not impose anything more than minimal procedures on the refund of exactions depending upon a conviction subsequently invalidated." She again requested that the bond money she put up be returned to her, as well as the court costs she paid. The State argued in response that, "prior to dismissal, [Billups-Dryer] did not file a motion [or] make a request at all." It again asserted that the court lacked jurisdiction to grant Billups-Dryer the relief she requested. The court noted that restitution had been paid to the purported victim, making her whole, so that the State "saw no need to relitigate these issues." Finding it lacked jurisdiction to act, the court

denied Billups-Dryer's motion. Billups-Dryer objected and argued that the court had jurisdiction to act because she timely filed her motion asking the court to amend its dismissal order to include the release of bond and any other funds she had paid to the court. The court rejected her argument, explaining to Billups-Dryer that "whatever [she] may have paid in the bond was surrendered to the victim in this case."

¶ 10    On July 28, 2023, Billups-Dryer filed a motion for reconsideration and then subsequently retained private counsel, who argued that the bond money needed to be refunded to Billups-Dryer under *Nelson v. Colorado*, 581 U.S. 128 (2017), where the Supreme Court held that the State must return fines and costs assessed against criminal defendants whose convictions have been reversed.

¶ 11    At a hearing on October 17, 2023, defense counsel argued that because Billups-Dryer's conviction was vacated, "the law is clear that her money for bond must be exonerated to her." The State argued in response that, because the money had already been paid out to the victim as restitution, the court lacked jurisdiction over the matter. The court stated, "correct me if I'm wrong, [but] my understanding is that because the complaining witness had been made whole, *** there was no need to litigate the matter again?" The State agreed, but defense counsel responded,

> "I don't believe that was the agreement my client entered into with the State to have it not re-prosecuted. If the State chose not to prosecute, he did not get a written agreement. My client did not agree that they could forfeit her $9,000.00 and then therefore she would not be taken to trial again. That was a *** decision made by the Assistant State's Attorney and the prosecutor's office alone. My client has a right to have the money that was taken from her that had to do with the conviction returned to her and that's clear by the Supreme Court of the United States as well by Illinois courts. So, if the State decided not to retry this case, at this point my client does not have any conviction against her. There is nothing that would

5

indicate that she should be out of the $9,000.00 which was put up for bond. So, for Mr. Taylor to say that there was an agreement made, that is absolutely patently not true and if he can show me this in writing, then fine, but my client never agreed that there would be no—that she would take, in lieu of an additional prosecution, the forfeiting of her $9,000. That's why she did a motion to get her money paid back to her. That was a decision that was made by the State's Attorney and the State's Attorney alone."

The State responded that, "at the time that I dismissed this case, I made it very clear, I spoke with the victim and because I spoke with the victim and I stated that she acknowledged that she was given the money and she no longer wished to proceed because she had received the money that we were dismissing the case." Defense counsel countered, "My client did not agree to that. *** There is no reason, there is no legal reason to keep her bond put up on the case which has been reversed." The court asked the parties to brief the issue further.

¶ 12    Without citing any authority in its brief, the State argued that the restitution statute "imposes a duty upon the trial courts to order restitution to benefit victims so they can avoid the bother, expense and delay often present in the civil justice system." It argued that, because the restitution was "now the property of the victim," the court lacked jurisdiction to "divest the victim of this currency" or to "force a deduction from the treasury of the government a return of money not in [its] possession." Billups-Dryer argued in response that "the State knew at the time they tendered funds to the alleged victim that there was a possibility of a successful appeal. The State should have waited until such time as a final disposition before tendering money to a third party, money that they are not entitled to keep."

¶ 13    On January 10, 2024, the court denied Billups-Dryer's motion to reconsider. It noted that on September 17, 2019, it "signed an order authorizing $9,000 to be paid to [Patterson-Joseph]

6

and to be deducted from the bond" and that "[r]estitution was paid to [Patterson-Joseph] on or before June 24th of 2021." The court noted that when Billups-Dryer requested the return of her bond money on May 16, 2023, "the funds were no longer in the custody of the Court." It stated, "The restitution that Ms. [Billups-Dryer] seeks is now the property of [Patterson-Joseph] and the Court does not have jurisdiction to divest [Patterson-Joseph] of this currency, nor does it have the jurisdiction to force [Patterson-Joseph] to surrender or return any funds in her possession to Ms. [Billups-Dryer]; therefore, the request of the defendant to restore or return any restitution to her is denied."

¶ 14    Defense counsel continued to argue that "[w]hat she put up was a bond to this Court. What the Court and the State decided to do after that with her money, is what the Court and the State decided to do. *** The $9,000 was put up as a bond for her not to go into custody at the time after she was convicted. That is a bond." The court responded that

> "[t]he matter was dismissed because *** [Patterson-Joseph] had been made whole and
> the State saw no need to proceed with the case. For that reason the case was dismissed by
> the State and it is disingenuous for parties to come back to court and now to request the
> restitution that they paid freely and voluntarily. Strike that. It wasn't freely and
> voluntarily. The Court had ordered, after the finding of guilty, the Court had ordered that
> the restitution be paid and because restitution had been paid and because [Patterson-
> Joseph] did not see any need to proceed because she had been made whole, the State had
> agreed to dismiss the case. [Billups-Dryer] then turns around and requests the restitution
> back. The Court doesn't have the money, *** and I would be—I'm certainly inclined to
> follow any instructions from the Appellate Court as to how [Billups-Dryer] may receive

her $9,000, but at this juncture I have no authority to order [Patterson-Joseph] to pay or to reimburse Ms. Billups the $9,000. For that reason your motion is denied."

The court did not address the nonrestitution money paid by Billups-Dryer for court and probation fees.

¶ 15                                    II. ANALYSIS

¶ 16    The court ordered Billups-Dryer to pay restitution in the amount of $9,000 to the victim after she was convicted of theft. After her conviction was vacated, however, she argued that all the funds she paid to the court, including her bond money that was used for restitution, must be returned to her. The court found that, because Billups-Dryer's bond money had already been disbursed to the alleged victim as restitution, it lacked jurisdiction to order Patterson-Joseph to return these funds to Billups-Dryer. The court did not address whether it had jurisdiction to order the State or clerk of the court to refund to Billups-Dryer money paid as restitution, nor did it address the court fees and fines.

¶ 17                          A. Circuit Court's Jurisdiction

¶ 18    The State argues that the circuit court correctly determined that it lacked jurisdiction to order the return of the restitution funds paid by Billups-Dryer. While a circuit court generally loses jurisdiction over a case once a final judgment is entered and the litigation is terminated between the parties, the court retains inherent authority to enforce its orders and judgments. *County of Cook v. Illinois Fraternal Order of Police Labor Council*, 358 Ill. App. 3d 667, 671 (2005); see *American Society of Lubrication Engineers v. Roetheli*, 249 Ill. App. 3d 1038, 1042 (1993) (" 'It is an elementary principle of law that judicial power essentially involves the right to enforce the results of its own exertion.' " (quoting *Cities Service Oil Co. v. Village of Oak Brook*, 84 Ill. App. 3d 381, 384 (1980))); *Baltimore & Ohio R.R. Co. v. United States*, 279 U.S. 781, 786 (1929) ("The

8

right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established. And, while the subject of the controversy and the parties are before the court, it has jurisdiction to enforce restitution and so far as possible to correct what has been wrongfully done."); *United States v. Lewis*, 478 F.2d 835, 836 (5th Cir. 1973) ("Since the district court was empowered to set aside the [defendant's] conviction, it could also correct the unlawful result of the conviction and require the repayment of the money collected as fines."); *Cooper v. Gordon*, 389 So. 2d 318, 319 (Fla. Dist. Ct. App. 1980) (finding that the district court had jurisdiction to entertain the defendant's motion for a refund of the fines, costs, and restitution that he paid before his conviction was reversed). After we reversed Billups-Dryer's theft conviction and remanded her case, the court issued an order vacating her conviction. We find that the court possessed inherent authority to enforce that order, including refunding the costs, fees and restitution that were inextricably tied to the vacated conviction. We therefore turn to the merits of Billups-Dryer's claim.

¶ 19                                 B. Standard of Review

¶ 20      Billups-Dryer argues that the trial court violated her due process rights when it denied her motion for the refund of the restitution and other court costs she paid as a consequence of her now-vacated conviction. Procedural due process claims present a question of law, which we review *de novo. People v. Stoecker*, 2020 IL 124807, ¶ 17.

¶ 21                           C. Refund of Restitution and Other Fees

¶ 22      Billups-Dryer argues that, based on the Supreme Court's holding in *Nelson*, 581 U.S. 128, the trial court had no choice but to return the court fees and bond money she put up, even though the bond money was subsequently distributed to the purported victim as restitution. In *Nelson*, the Supreme Court addressed the following question: "[w]hen a criminal conviction is invalidated by

a reviewing court and no retrial will occur, is the State obliged to refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, the conviction?" *Id.* at 130. The Court responded, "Our answer is yes. Absent conviction of a crime, one is presumed innocent." *Id.* at 130, 135-36 (finding that a defendant possesses an "obvious interest" in a refund and that, because an overturned conviction restores the presumption of innocence, this erases any State claim to funds paid in the form of costs, fees, or restitution). It further held that, "[t]o comport with due process, the State may not impose anything more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated." *Id.* at 139.

¶ 23    Based on the Supreme Court's decision in *Nelson*, we find that all fees, court costs, and restitution tied to Billups-Dryer's since-vacated conviction must be refunded to her. See, *e.g.*, *Commonwealth v. Martinez*, 109 N.E.3d 459, 466 (Mass. 2018) ("There can be no doubt that, because of [*Nelson v. Colorado*], Massachusetts courts are required to order the refund of fees, court costs, and restitution paid by a defendant as a consequence of a later invalidated conviction."); *United States v. Coddington*, 802 F. App'x 373 (10th Cir. 2020) (finding, based on *Nelson*, that if defendant's convictions are vacated, the restitution order must be vacated as well and therefore remanding to the district court with instructions to vacate the judgment, including the convictions and the restitution order).

¶ 24    The State argues that *Nelson* is distinguishable because, unlike the defendants in *Nelson*, Billups-Dryer did not personally pay the funds at issue and, instead, asked the court to refund the money that was posted "on [her] behalf" by others. It notes that the $9,000 bond was paid by Billups-Dryer's daughter using funds obtained from Billups-Dryer's husband's retirement account. We disagree. As we have repeatedly stated, bond money "can be used to pay fines despite third-party claims on the funds." *People v. Markovich*, 195 Ill. App. 3d 999, 1004-05 (1990); see

*People v. Resnick*, 373 Ill. App. 3d 163, 167 (2007) (finding that the trial court did not err when it ordered the bond funds to be used for payment of restitution even though the bond was paid by defendant's brother-in-law, reasoning that the "court possessed the statutory discretion to order that restitution be paid from the bond, regardless of who paid the bond"). We see no reason why a defendant cannot request the return of funds paid on her behalf by others. Nor would the State's approach be practical. If a third party provides money for the monetary judgment against a defendant, the criminal court typically will have no insight into the manifold possibilities underlying that arrangement. Was it intended as a gift to the defendant? Was there an agreement or contract about its repayment? Was it already paid back in part or in full? Usually, the court will not know. To find out may be burdensome and time-consuming. And, in any event, the court's proper focus is on the monetary judgments and payments (and refunds) themselves, not on extraneous information about the history of the money paid on the defendant's behalf. Thus, we find the State's argument is not persuasive and conclude that the fees, court costs, and restitution tied to Billups-Dryer's conviction must be returned to her, regardless of whether they were paid by her personally or by third parties.

¶ 25   The remaining question, which was not at issue in *Nelson* or any of the other cases cited by the parties, is whether the funds must be returned to a defendant even though they are no longer in the State's possession. No Illinois court has yet addressed this issue, so we look to other jurisdictions for guidance.

¶ 26   In *United States v. Medicine Horn*, No. CR 98-40126, 2019 WL 981643, *1 (D. S.D. Feb. 28, 2019), the defendant moved for the return of the fine, fees, and restitution he paid after his conviction was vacated. While the government acknowledged that the money paid toward the fine and assessment would normally be returned to the defendant when a conviction is vacated, it

argued that the restitution had already been disbursed to the victims so the funds were no longer in the court's possession or control. *Id.* *2. The court looked to Justice Alito's concurrence in *Nelson* for guidance, where he expressed his concerns about this very factual scenario, stating:

"Would the Court reach [the same] conclusion if state law mandated a refund from the recipients of the restitution? And if the States and the Federal Government are always required to foot the bill themselves, would that risk discourage them from seeking restitution—or at least from providing funds to victims until the conclusion of appellate review?

It was unnecessary for the Court to issue a sweeping pronouncement on restitution. But if the Court had to address this subject to dispose of these cases, it should have acknowledged that—at least in some circumstances—refunds of restitution payments made under later reversed judgments are not constitutionally required." *Nelson*, 581 U.S. at 148 (Alito, J., concurring).

Finding Justice Alito's concurrence "instructive," the court held that in "circumstances such as the present case, where the restitution funds have been disbursed to the victims, the United States should not be required to refund the defendant." *Medicine Horn*, 2019 WL 981643, at *3. The court added that it was "not aware of any authority that it has jurisdiction to require parties not before the Court, such as the victims in this case, to refund [defendant's] restitution payments." *Id.*

¶ 27    By contrast, in *United States v. Beckner*, 16 F. Supp. 2d 677, 679 (M.D. La. 1998), the government distributed restitution money to third parties before the entry of a final criminal judgment. The government argued that it had no obligation to repay the defendant after his conviction was vacated on appeal because it no longer had the funds and suggested that it was the defendant's obligation to pursue restitution from those to whom the government paid the money.

*Id.* Finding the "government offers neither logic nor authority to support this argument," the court concluded that, because "[t]he government foolishly disbursed [the defendant's] money to third parties before there was a final judgment that such restitution was due," the government must repay the funds to the defendant. *Id.* Although the government argued that the court lacked the authority to order it to do so when it no longer had the funds, the court found that it "ha[d] jurisdiction to carry out its obligation to completely vacate all aspects of the erroneous judgement issued by it," including improperly paid restitution. *Id.* at 678-79. The court stated,

"[i]n this criminal case the final judgment is that [defendant] owed restitution to no one. The government chose to disburse [defendant's] money to claimants to whom [defendant] owed nothing. As in any other situation in which payment of a judgment subject to reversal on appeal is exacted pending appeal, the recipient who exacted the payment owes repayment. In order to be relieved of the effect of the erroneous judgment, [defendant] certainly should not have to pursue those to whom the government made a gift of his money." *Id.* at 679.

¶ 28    We find the court's decision in *Beckner* particularly instructive, because the facts parallel those at issue here. Although the State has a legitimate interest in ensuring that "[c]omplete restitution shall be paid [to victims] in as short a time period as possible" (730 ILCS 5/5-5-6(f) (West 2018)), the trial court and the State permitted Billups-Dryer's bond money to be released to Patterson-Joseph as restitution *before* Billups-Dryer's appeal was decided. As defense counsel aptly argued, "[t[he State should have waited until such time as a final disposition before tendering money to a third party, money that [the third party was] not entitled to keep." *Cf. United States v. Hayes*, 385 F.3d 1226, 1228-30, 1230 n.5-6 (9th Cir. 2004) (predating *Nelson* and expressly distinguishing *Beckner* and holding that, if the government properly held restitution funds until the

defendant's conviction was affirmed on appeal but distributed it to the victims before the defendant's conviction was vacated in subsequent collateral proceedings, the government was not required to refund the restitution to the defendant, reasoning that "[n]ot only would it be impractical for the payment of restitution to be suspended indefinitely in this manner, it would also be inconsistent with the duty to execute final judgments"). Because the government disbursed Billups-Dryer's money to a third party before the appeal of her conviction was final, we find that Billups-Dryer must be refunded the monies she paid in connection with her since-vacated conviction.

¶ 29    To avoid this result, the State could have attempted to obtain an agreement from the defendant not to seek reimbursement of restitution already paid to the victim before electing not to retry her. The State suggested to the court that it did obtain Billups-Dryer's agreement here, but there is no evidence in the record to support such an assertion. Accordingly, we hold that, even though the government is no longer in possession of Billups-Dryer's $9,000 bond, it must bear the burden of repaying her because it disbursed those funds before Billups-Dryer's conviction was made final. The government could have avoided this situation entirely by waiting to pay out restitution until Billups-Dryer's conviction was affirmed on appeal.

¶ 30    *Nelson* was decided well before the present dispute, and the State is presumed to know the law. Moreover, the State was also on notice that Billups-Dryer's conviction was subject to challenge because she filed her appeal the day she was sentenced. As we pointed out above, the present dispute could have been avoided had the State either (a) secured an agreement on the record with Billups-Dryer that, in exchange for moving to nol-pros the case, she waive any claim to a refund of any money she paid in restitution or (b) obtained an order from the court staying disbursement of the restitution to the victim until Billups-Dryer's direct appeal was resolved. In

some states, courts are required to stay payment of costs and fees during the pendency of an appeal. See, *e.g.*, Mass. R. Crim. P. 31(c) ("If a reservation, filing, or entry of an appeal is made following a sentence to pay a fine or fine and costs, the sentence shall be stayed *** if there is a diligent perfection of appeal."); Mont. Code Ann. § 46-20-204(3) (West 2009) ("If an appeal is taken, a sentence to pay a fine or a fine and costs must be stayed by the trial court or by the reviewing court."). Our legislature may wish to consider enacting similar legislation.

¶ 31     Because the State failed to obtain a stay or an agreement from Billups-Dryer regarding the restitution money, we find that Billups-Dryer is entitled to a refund of the amount paid to Patterson-Joseph in restitution. We express no opinion on whether the State may recoup those funds from Patterson-Joseph, other than to note Patterson-Joseph is without fault.

¶ 32     Billups-Dryer notes that there does not appear to be direct authority in Illinois dictating the process by which a refund of fees, costs, and restitution may be sought but suggests that we look to section 124A-15 of the Code of Criminal Procedure of 1963 (725 ILCS 5/124A-15 (West 2018)) for guidance. Section 124A-15, titled "Reversal of conviction; refund of fines, fees, and costs" applies to defendants whose convictions are reversed "by a finding of factual innocence in a collateral proceeding" and states that, if the defendant already paid costs, fines, or fees, "a refund of those costs shall be determined by the judge and paid by the clerk of the court." *Id.* To obtain the refund, the defendant must obtain a court order, "demonstrating the defendant's right to the refund and the amount of the refund." *Id.*

¶ 33     Other states follow similar procedures. See, *e.g.*, Colo. Rev. State. Ann. § 18-1.3-703 (West 2017) (outlining a procedure for defendants whose convictions have been vacated to seek return of fines, fees, costs, restitution, and other monetary amounts paid by filing a written motion and establishing their eligibility for a refund by a preponderance of the evidence); *Martinez*, 109

N.E.3d at 476-78 (finding that, when a defendant applies for a refund of monies paid as a direct consequence of a conviction that has been invalidated, he should file a motion for refund in the court where he was convicted and swear or attest that the information provided in support of the motion is true to satisfy his burden of production; the State can then rebut the defendant's claims by producing evidence that the defendant is not entitled to a refund or is entitled to a refund in an amount that differs from what he or she requested, and the court should consider the evidence, conduct an evidentiary hearing, if necessary, to resolve any disputes, and then order the refund of any monies owed to defendant).

¶ 34    In the absence of guidance from our legislature, we find that, when a defendant whose conviction has been vacated seeks the return of fines, fees, restitution, and other monetary amounts exacted on account of the conviction, he should file a motion, accompanied by an affidavit and any supporting documentation, to support his request for a refund. The State can then submit any evidence to counter defendant's assertions. If necessary, a hearing should be held so the court can determine the amount owed to defendant. After that determination is made, the court should order the clerk of the circuit court to refund the money to the defendant.

¶ 35                                III. CONCLUSION

¶ 36    For the foregoing reasons, the judgment of the circuit court is reversed. The court erred when it failed to order that all monies exacted on account of Billups-Dryer's since-vacated conviction be refunded to her. On remand, the circuit court is directed to allow the parties to submit evidence and, if necessary, to hold a hearing to determine the total amount of money due to be refunded to Billups-Dryer, which should include the $9,000 bond paid, as well as any court costs and fees. Once this amount is determined, the circuit court should order the clerk of the circuit Court to refund Billups-Dryer the amount she is owed.

¶ 37    Reversed and remanded with directions.

¶ 38    JUSTICE HYMAN, specially concurring:

¶ 39    I concur in the judgment and with the court's analysis requiring the refund to Billups-Dryer. I write separately because the opinion leaves unresolved whether the State may pursue the victim to recoup restitution already disbursed under a conviction that has since been vacated. I believe that the State, having created the problem, should bear the risk of reversal.

¶ 40    The victim in this case is without fault. She neither sought restitution prematurely nor played any role in the reversal of the conviction. By proceeding as it did, the State assumed the risk that the conviction could be overturned on appeal. When the government takes that risk and loses, the loss should belong to the government, not an innocent victim. Restitution exists to repair harm done to victims, not to expose them to repayment demands years later due to procedural errors made by others. (On the merits, the evidence at the trial left no doubt that Billups-Dryer obtained $9,000 from the victim by deception.)

¶ 41    The Illinois Constitution gives crime victims "[t]he right *** to be free from harassment, intimidation, and abuse throughout the criminal justice process." Ill. Const. 1970, art. I, § 8.1(a)(1). Allowing the State to pursue repayment would erode that right, compromising the protections our system owes to victims, discouraging future cooperation, and undermining the public's confidence in restitution as a reliable safeguard.

¶ 42    If the State wishes to prevent disputes of this kind, it can seek to delay disbursement of restitution until the appellate process has run its course, or it can seek an express waiver from the defendant as a condition of early payment. When the State hastens the distribution of restitution

before finality, it accepts the possibility that it may later have to bear the cost of repayment itself.

That outcome is far preferable to shifting the burden onto an innocent victim.

*People v. Billups-Dryer*, 2025 IL App (1st) 240221

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-C6-60468; the Hon. Carl B. Boyd, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Ian R. Jackson, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (Enrique Abraham, Douglas P. Harvath, and Brenda K. Gibbs, Assistant State's Attorneys, of counsel), for the People. |