NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250116-U

NO. 4-25-0116

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 27, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| MASTERS ENTERPRISES, LLC, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Marshall County |
| THE LANDINGS AT HENRY HARBOR, LLC, | ) | No. 19MR4 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Paul E. Bauer, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Presiding Justice Steigmann and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court had jurisdiction to enter a supplemental award for contractual attorney fees incurred in the process of enforcing the judgment, but the award should not have included fees incurred in a different case.

¶ 2     Plaintiff Masters Enterprises, LLC (Masters), brought this action to terminate a lease with its tenant, defendant The Landings at Henry Harbor, LLC (Landings). The circuit court granted summary judgment in favor of Landings and later awarded contractual attorney fees against Masters. During postjudgment enforcement proceedings, the court made an additional attorney fee award. On appeal, Masters contends that the court improperly granted supplemental attorney fees at a time when it lacked jurisdiction and that some of the fees do not relate to enforcement of the judgment in this case. For the reasons that follow, we reverse and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4　　　As most of the issues here relate to procedural matters below, we dedicate little of our discussion to the initial substantive dispute between the parties and instead focus on the protracted procedural history of this case.

¶ 5　　　Landings was already a tenant of property owned by the City of Henry, Illinois, when Masters bought the property, subject to Landings's lease, in 2017. In February 2019, Masters initiated suit alleging, among other things, that Landings breached the lease by failing to keep the property in good repair and by failing to pay real estate taxes and insurance. Masters eventually filed a five-count amended complaint, to which Landings filed an answer that included affirmative defenses. Landings's answer requested judgment in its favor, "including costs of defending this suit[ ] and attorney's fees." As the matter progressed, the circuit court dismissed counts I and III of Masters's complaint, and Masters did not attempt to replead them.

¶ 6　　　Landings moved for summary judgment on the remaining counts (II, IV, and V), which the circuit court granted on February 22, 2022. The motion did not mention a request for an award of attorney fees, nor did Landings's counsel when the motion was argued. The circuit court granted Landings's motion on all remaining counts and included in its order a finding that "[t]here is no just reason to delay enforcement or appeal of this order."

¶ 7　　　On March 18, 2022, Masters filed a motion for reconsideration of the circuit court's summary judgment ruling. On July 20, 2022, it supplemented its motion. The court denied Masters's motion to reconsider on August 16, 2022, and its order again included a finding that "[t]here is no just reason to delay enforcement or appeal" of the order denying reconsideration.

¶ 8　　　On September 14, 2022—204 days after the entry of judgment and 29 days after denial of Masters's motion for reconsideration—Landings filed a motion seeking an award of

contractual attorney fees against Masters in the amount of $32,721.52. The motion was accompanied by a copy of the lease, and it specifically referenced this lease provision:

> "*Attorney's Fees and Costs.* In the event that either party should find it necessary to retain an attorney for the enforcement of any of the provisions hereof occasioned by the fault of the other party, the party not at fault shall be entitled to recover reasonable attorneys' fees and court costs incurred as a result thereof, whether said attorneys' fees are incurred for the purpose of investigation, negotiation, trial, appellate proceedings or other legal services."

The motion was also accompanied by the affidavit of counsel, stating that the total amount of fees incurred by Landings with respect to "this matter" as of September 14, 2022, was $32,721.52.

¶ 9      On November 23, 2022, the circuit court granted Landings's motion and entered a fee award in the requested amount.

¶ 10      Another motion was filed on December 14, 2022, purporting to be on behalf of Masters. The motion was not filed by counsel on behalf of Masters, a limited liability company, but by a person named Audrey Bishop. The motion did not attack the judgment *per se*, nor did it specifically seek reversal of the attorney fee award. Instead, the motion sought copies of the itemized bills of Landings and release of an insurance check, stating:

> "Motion for All Itemized Bills from Marvel Law for legal services pertaining to litigation between Masters Enterprises and Landings at Henry Harbors (Already requested from Both Marvel Law and The Landings) Release of Insurance check for Fire Damage at the Landings at Henry Harbor in 10/2020 (Requested for multiple times to both The Landings and Marvel Law without Response or Refusal)."

- 3 -

Bishop signed the pleading as herself, without identifying her relationship with Masters; a later pleading identified her as the sole owner of Masters. As this motion was not filed by counsel on behalf of Landings, we will refer to it as the "*pro se* motion." The motion was noticed for presentment on February 1, 2023, but an amended notice moved that date to February 14, 2023.

¶ 11 Landings went on to file numerous pleadings in supplementary proceedings in enforcement of its judgment, including citations to discover assets and a motion seeking a turnover of insurance proceeds in the amount of $31,312.27.

¶ 12 In response to the *pro se* motion seeking fee itemization, Landings argued that the motion was untimely because it was filed approximately three months after the fee award order it addressed. On January 18, 2023, Landings filed a motion asking that it be awarded additional expenses and attorney fees against Masters, this time under Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). The Rule 137 motion argued that the *pro se* motion filed in December 2022 was improper because it was untimely and lacked a legal basis. The same day it filed its response to the *pro se* motion, Landings filed a motion seeking turnover of $531.40 in one of Masters's bank accounts.

¶ 13 The February 1, 2023, hearing was continued by agreement to March 15, 2023, due to an appearance being recently filed by new counsel for Masters. The circuit court also entered a turnover order for the $531.40 bank account on February 1.

¶ 14 On March 14, 2023, Masters's new counsel filed an "Amendment to Motion to Reconsider," which it purported to be an amendment to the still-pending *pro se* motion filed December 14, 2022. The new motion argued that the $32,721.52 contractual fee award made on November 23, 2022, was improper due to insufficient documentation on which to determine its reasonableness.

¶ 15     Landings's response to Masters's amended motion argued that the initial *pro se* motion concerning fees was untimely, as the circuit court had already ruled on the reasonableness of the requested fees. Landings also argued that Masters was entitled to only one postjudgment motion directed against the court's final order, and it suggested that the final order here was the February 22, 2022, order granting summary judgment (but which was silent as to fees). Landings later filed an amendment to its response, asking for permission to submit evidence of the reasonableness of its attorney fee request, should the court find such additional information to be necessary.

¶ 16     The hearing date on multiple outstanding matters was continued several times. On February 9, 2024, the circuit court entered an order noting that it had received additional itemized attorney fee statements from Landings's counsel. Based on this information, the court found that the fees awarded in its November 23, 2022, order were reasonable, and it reentered judgment in Landings's favor in the amount of $32,721.52, the same amount specified in the order of more than one year prior.

¶ 17     In June 2024, Landings filed a "Supplemental Motion for Attorneys' Fees and Costs," seeking an additional $16,741 in attorney fees and costs for work done from November 23, 2022, through the date of the motion. An exhibit attached to the motion included an itemization of attorney fees.

¶ 18     On July 22, 2024, Masters moved to dismiss the request for supplementary fees and costs, arguing that the February 9, 2024, order—which awarded Landings contractual attorney fees of $32,721.52 for a second time—was a final judgment. Because no motion for fees was filed within 30 days of that order, Masters argued that the court lost jurisdiction to hear such a motion filed after that time. Masters also argued against the improper inclusion of fees relating to a second

lawsuit between the parties in Marshall County case No. 23-EV-6 and fees related to Landings's purchase of the note on the property from a local bank. In response, Landings argued the circuit court retained jurisdiction over attorney fees, as there were still pending matters to be settled, *i.e.*, the motion for turnover order. Masters replied that the court only had jurisdiction to enforce its orders after 30 days but otherwise lost jurisdiction to modify the parties' rights and responsibilities.

¶ 19     On September 23, 2023, the matter was before the circuit court pursuant to the date set in its previous order. Counsel for Landings appeared, but counsel for Masters did not. The court discussed the fact that, at their last hearing, the parties had discussed setting the next hearing date for September 24, not September 23. However, counsel noted that the court's order clearly set the September 23 date and that Masters's counsel was aware of it. The court decided to proceed, and it ruled in favor of Landings on all issues. In an order entered the next day, the court found that notice of the September 23 court date had been provided to all parties. The order denied Masters's motion to strike Landings's supplemental petition for fees, and it entered a fee award in the amount of $16,741. The Court also denied Masters's motion to strike the motion for turnover order, and it entered another turnover order against Nationwide Insurance in the amount of $31,312.27.

¶ 20     On September 30, 2024, Masters filed a motion seeking to vacate both orders. The motion principally argued that the orders were void due to Masters's counsel having received inaccurate notice of the hearing date. Masters also repeated the arguments from its prior motion that (1) the circuit court lost jurisdiction to enter another fee order and (2) the turnover order was invalid because one party to the Nationwide Insurance check, Morton Community Bank, had not been given notice. The court denied the motion, and this appeal followed.

¶ 21                              II. ANALYSIS

- 6 -

¶ 22    Masters's appeal is focused on the validity of the September 24, 2024, order awarding an additional $16,741 in contractual attorney fees to Landings. Masters argues that the court erred in two essential respects. First, it argues that the court lost jurisdiction to enter the fee order more than 30 days after the February 9, 2024, order, which Masters characterizes as the final order in the case. Second, Masters contends that the court's fee award is defective on the merits because it includes fees incurred in a different case that had not yet gone to final judgment, as well as legal work done for Landings in connection with purchasing a loan owed by Landings to its bank. In response, Landings argues that (1) the February 9, 2024, order, was not the final order in the case, and, if it was, the parties revested the circuit court with jurisdiction and (2) Masters failed to preserve its challenge to the merits of the fee award on the ground that the award provided for recovery of fees incurred in a different case or in matters unrelated to enforcement of the judgment.

¶ 23                                    A. Appellate Jurisdiction

¶ 24    The parties disagree whether the circuit court had jurisdiction to enter the September 24, 2024, order assessing additional contractual attorney fees against Masters. Neither party has, however, questioned whether this court has jurisdiction over the appeal. Regardless, we have an independent obligation to consider our jurisdiction. *In re Estate of Johnson*, 2023 IL App (4th) 220488, ¶ 14.

¶ 25    Here, the substantive order being appealed from is the circuit court's order of September 24, 2024, allowing a fee award to Landings in the amount of $16,741. Our initial question is whether that order was final and appealable. The record reflects that, approximately a year and a half before the order at issue was entered, Landings filed a Rule 137 motion for sanctions against Masters. See Ill. S. Ct. R. 137 (eff. Jan. 1, 2018). That motion has still not been resolved. A Rule 137 motion is "considered a claim within the same civil action." Ill. S. Ct. R.

137(b) (eff. Jan. 1, 2018). "A judgment or order is not final and appealable while a Rule 137 claim remains pending unless the court enters a finding pursuant to [Illinois Supreme Court] Rule 304(a) [(eff. Mar. 8, 2016)]." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 26    The Illinois constitution gives parties the right to appeal from final circuit court judgments. Ill. Const. 1970, art. VI, § 6. Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) recognizes and implements this right. Appeals from something other than the final order in a case are pursuant to rule as determined by the Illinois Supreme Court. Ill. Const. 1970, art. VI, § 6.

¶ 27    By definition, postjudgment enforcement proceedings occur after the entry of the final judgment ordered in a case. While a circuit court generally loses jurisdiction over a case once a final judgment is entered and the litigation is terminated between the parties, it retains inherent authority to enforce its orders and judgments. *People v. Billups-Dryer*, 2025 IL App (1st) 240221, ¶ 18. Furthermore, even though the final judgment order has come and gone, the acts of the circuit court in the postjudgment setting are not immune from review. Rule 304(b)(4) makes a "final judgment or order entered in a proceeding under 2-1402 of the Code of Civil Procedure" immediately appealable without the need for a special finding. Ill. S. Ct. R. 304(b)(4) (Mar. 8, 2016) (citing 735 ILCS 5/2-1402 (West 2024)). Section 2-1402 sets forth the rules for what are sometimes called "supplementary proceedings" seeking collection of an outstanding money judgment, including citations to discover assets. Ill. S. Ct. R. 304(b), Committee Comments (rev. Sept. 1988). It also allows for entry of any orders that could be entered in connection with a garnishment proceeding. 735 ILCS 5/2-1402(k-3) (West 2024); 735 ILCS 5/12-701 *et seq.* (West 2024).

¶ 28    Even though Rule 304(b)(4) makes orders in proceedings under section 2-1402 immediately appealable, it does so only in regard to such orders which are themselves *final*. In the

context of a supplementary proceeding, such as garnishment, finality means conclusion of the process of garnishment. See *In re Marriage of McElwee*, 230 Ill. App. 3d 714, 719 (1992) (noting that initiation of the garnishment process "placed the parties at the beginning of the garnishment process, not the end," leaving several steps before the judgment creditor "can actually collect the judgment debt"). Presumably this would be the same rule for other types of supplementary proceedings, including citations to discover assets.

¶ 29    A final wrinkle here is that while the process of judgment enforcement is generally designed to *reduce* the amount owed to the judgment creditor, the type of order entered on September 24, 2024, actually *increased* the amount owed by Masters to Landings. However, to the extent the fees sought by Landings related to its expenses in enforcement of the original judgment against Masters, the circuit court had continuing jurisdiction to make that award. See *Vajgert v. Lorton*, 2025 IL App (2d) 240383-U, ¶ 20.

¶ 30    Synthesizing the foregoing principles, we conclude that the circuit court's order of September 24, 2024, was final in its own right, subject only to any continuing enforcement efforts. Because it arose in the context of enforcement proceedings under section 2-1402, Rule 304(b)(4) allows for an interlocutory appeal of the order. This is true even though the long-pending Rule 137 motion remained unresolved. See *Williams Montgomery & John Ltd. v. Broaddus*, 2017 IL App (1st) 161063, ¶ 35 (holding that where an enforcement order was otherwise final, it was immediately appealable under Rule 304(b) despite the pendency of a motion for sanctions).

¶ 31    Having established that the circuit court's September 24, 2024, order was final and appealable pursuant to Rule 304(b)(4), we next examine whether Masters timely appealed from it. Within six days of the order, Masters filed its "Motion to Vacate Turnover Order and Order Allowing Additional Attorney Fees." This motion was clearly directed against the merits of the

court's September 24, 2024, order. The supreme court has held that the equivalent of a timely posttrial motion tolls the time for appeal under a different section of Rule 304(b). See *Elg v. Whittington*, 119 Ill. 2d 344, 355 (1987) (finding that time for appeal under Rule 304(b)(3) was tolled by filing of a motion directed against the order at issue). We believe the same conclusion must be drawn here. Because the motion to vacate was filed within 30 days of the September 24, 2024, order, it tolled the time for appeal. Because Masters filed its notice of appeal within 30 days of the disposition of the motion to vacate, its appeal is timely and we have jurisdiction.

¶ 32                              B. The Circuit Court's Jurisdiction

¶ 33            Having resolved the propriety of appellate jurisdiction, we turn to Masters's contention that the circuit court lost jurisdiction 30 days after its February 9, 2024, order, so it lacked jurisdiction to enter the September 24, 2024, order awarding additional fees to Landings. Our discussion above resolves this question. Without addressing *which* of the court's orders constituted the original final order in the case, the record makes clear that the parties were engaged in the process of various judgment enforcement proceedings pursuant to section 2-1402. As explained above, the court's continuing jurisdiction over those enforcement matters also gave it continuing jurisdiction to enter an award of contractual attorney fees Landings incurred in enforcing the original judgment. In this respect, the date of the final order that preceded the motion is immaterial. We therefore reject Masters's contention that the court lacked jurisdiction to enter the September 24, 2024, order.

¶ 34            Although not jurisdictional in nature, Masters also argues that Landings should not have been awarded fees that predated the final judgment during enforcement proceedings. While there is some confusion about which of the prior orders constituted "the" final judgment in the case, there is also a reasonable question raised about whether the latter fee award may overlap with

the earlier one. However, the record reflects that the initial fee request of $32,721.52 related to fees incurred as of September 14, 2022, while the earliest date of the fee entries sought later was September 19, 2022. The record does not suggest any overlap or redundancy between the two fee awards. In other words, Landings was contractually entitled to recovery of its reasonable fees incurred in *pursuing* its judgment, as well as its fees incurred *enforcing* that judgment. If fees awarded at one time should have actually been awarded at a different time, it is immaterial; the total amount ends up being the same.

¶ 35                    C. Fees Incurred in a Separate Legal Matter

¶ 36        Masters also argues that the circuit court erred in awarding Landings its fees incurred not in enforcement of the judgment in this case, but in the litigation of a separate and still pending case between the parties and in the acquisition of a note on the property. Landings argued that this issue was not properly preserved by Masters. We reject Landings's contention that the issue is not preserved for review for two reasons.

¶ 37        First, Landings concedes that Masters argued as follows in the circuit court:

> "The requested supplemental attorney fee motion is also objectionable for including attorney fees incurred in 2023 EV6 where no final determination has been made, and thus no fee award is due. The supplemental motion also includes fees for a turnover order which has not occurred and for seeking to purchase the Plaintiff's note from Morton Community Bank, which while perhaps important to Defendant, in no way represents fees for Defendant being successful in the instant suit."

Masters clearly raised the issue, and we reject Landings's argument to the contrary.

¶ 38        Second, we reject Landings's contention that it was "necessary to raise an objection in a post-trial motion to preserve an issue for review." Landings inaptly cites the criminal case of

*People v. Pasch*, 152 Ill. 2d 133 (1992), for the proposition. In civil, nonjury cases, however, "[n]either the filing of nor the failure to file a post-judgment motion limits the scope of review." Ill. S. Ct. R. 366(b)(3)(ii) (eff. Feb. 1, 1994).

¶ 39    Masters argues that a prevailing party fee provision does not allow a party to collect fees where it has not yet prevailed on the case in which those fees were incurred. That proposition seems indisputable. Moreover, beyond merely the conclusion of the other case, Landings makes no argument that a fee award made in the course of judgment enforcement *in this case* was a proper vehicle for it to seek recovery of fees incurred in a *different case* or in matters unrelated to enforcement of the judgment. We agree with Masters that such fees appear to have been part of the September 24, 2024, fee award, and they should not have been. We therefore reverse the circuit court's order making that award and remand the cause with directions that the court extract from the award any of the fees relating to such extraneous matters. The court may reenter an award in the appropriate amount related to judgment enforcement in this case.

¶ 40                                III. CONCLUSION

¶ 41    For the reasons stated, we reverse the circuit court's judgment and remand with directions.

¶ 42    Reversed and remanded with directions.